MARYELLEN S. HASSEY vs. EDWARD P. HASSEY.

No. 13-P-864.

Essex. March 5, 2014. - June 25, 2014.

Present: KAFKER, FECTEAU, & AGNES, JJ.

*Alimony Reform Act. Divorce and Separation,* Alimony, Division of property, Modification of judgment.

Discussion of the Alimony Reform Act of 2011 [522-523] and of the standard of review given to a division of marital property under G. L. c. 208, § 34, and to an award of alimony under G. L. c. 208, §§ 48-55 [523-524].

This court concluded that an award of general support alimony to the wife in a divorce proceeding did not comport with the guidelines of the Alimony Reform Act of 2011 (act), where it was not clear that the judge had considered all relevant factors required by G. L. c. 208, § 53(*a*); where the amount of the award exceeded the range set forth in G. L. c. 208, § 53(*b*), without a specific determination of the wife's need; and where the order contained a so-called "self-modifying" portion that required the husband to pay additional alimony without a judicial determination, supported by subsidiary findings of fact, of an increase in the wife's need accompanied by the husband's ability to provide for the same, and also required the husband to disclose quarterly income but imposed no reciprocal duty on the wife [524-529]; further, this court remanded the matter for further proceedings to eliminate the ambiguity of the duration of the award [529-530].

This court vacated that portion of an amended judgment of divorce nisi that excluded the wife's interest in certain real property from the divisible marital estate, where the judge's finding that the parties never relied on that interest as a financial resource during the marriage was not supported by the evidence. [530-533]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on October 28, 2009.

The case was heard by *Jeffrey A. Abber*, J.

*John A. Macoul* for Edward P. Hassey.

*Joseph L. Doherty, Jr.*, for Maryellen S. Hassey.

AGNES, J. The Alimony Reform Act of 2011 (Act)[1] is "a

_____

[1]See St. 2011, c. 124, codified at G. L. c. 208, §§ 34, 48-55.

comprehensive effort to address numerous issues in alimony law," including the elimination of "any historical connection to gender status or outdated gender stereotypes," clarification of various types of alimony, and recognition of durational limits on alimony awards. Kindregan, Reforming Alimony: Massachusetts Reconsiders Postdivorce Spousal Support, 46 Suffolk U. L. Rev. 13, 16, 18 (2013). In this case, we review the application of key provisions of the Act, which has received only limited appellate consideration.

The husband appeals from an amended judgment of divorce nisi entered August 30, 2012, by the Probate and Family Court, excluding the wife's interest in certain real property from the marital estate, and establishing a "self-modifying" alimony order. The husband contends that the alimony order does not comport with the guidelines of the Act, and that the exclusion of the wife's property from the divisible estate was plainly wrong. For the reasons that follow, we conclude it is necessary to vacate the amended judgment in part and remand for further proceedings.

*Background.* a. *Evidence.* The parties married on September 18, 1988, and lived together until December 28, 2009. Two sons, both in college at the time of trial, were born of the over twenty-year marriage. In 1982, the husband graduated from dental school and joined his father's practice, becoming an equal partner pursuant to a "buy-in" agreement prior to the marriage. The wife was a homemaker and primary caretaker of the children, while the husband was the sole wage earner. Although she earned a bachelor's degree and was briefly employed outside the home, the wife was laid off in early 1989 and has not been otherwise employed since before her first son was born. During the marriage, the family lived a "comfortable" lifestyle, with the husband working full time as a dentist and the wife tending to the home and children and volunteering to support their various activities, including sports, Cub Scouts, and private-school events.

In 1996, the wife acquired by inheritance a one-third share in Pond View Associates, a real estate partnership with her two siblings which holds title to a property in Chatham on Cape

Cod.[2] The wife's parents had purchased the Chatham property and on it built their retirement home, now maintained by the wife and her siblings. When not rented out to vacationers, the three siblings and their families have used the Chatham property as a getaway. During the marriage, the parties and their children spent at least two weeks there each summer, where they maintained various memberships in the community.[3]

In 1997, the husband's father retired and gifted to the husband his one-half interest in the dental practice,[4] simultaneously forgiving the $125,000 balance outstanding from their buy-in agreement. Another dentist subsequently joined the practice as a partner and entered into a similar buy-in agreement, with the husband receiving from it an additional $90,000 annually for five years ending in 2010. The partners began renovating and expanding the practice in 2008, prior to the initiation of divorce proceedings by the wife in October, 2009. At the time of trial in November, 2011, the husband reported gross annual income of $359,858 for the 2010 tax year,[5] along with $22,000 in voluntary contributions to his 401(k) retirement account.[6]

b. *Judge's findings of fact.* The judge issued his findings and memorandum of decision on May 15, 2012.[7] He found that the husband's income has been relatively stable since 2007, but that due to the additional $90,000 annual income no longer being owed by his partner after 2010, "[i]t would be inequitable to calculate an alimony obligation using the average income over

---

[2]The parties stipulated that the wife's share in Pond View Associates is valued at $300,000.

[3]The record indicates that any rental income from the Chatham property did not exceed the costs of maintenance and upkeep, resulting in no net income to the wife.

[4]The parties stipulated that the husband's share of the dental practice is valued at $476,000.

[5]For reasons we explain in the next paragraph of the text and in note 13, *infra*, we conclude the judge found that the husband's annual income after 2010 was $250,000.

[6]Both parties entered in evidence extensive financial documents and expert testimony, including eighty-nine exhibits and fifteen uncontested facts.

[7]The original judgment of divorce nisi issued on this day. Though the husband appeals from the subsequent amended judgment, no further findings were issued, and the terms of both judgments are materially identical as relates to this appeal.

the buy-in period unless the purchase monies were excluded." The judge credited the husband's testimony that the debt he incurred while renovating and relocating the dental practice "ha[d] not resulted in any further net income to date[,] but as the debt is paid down, the investment should prove profitable." The judge explained that the "self-modifying" alimony order[8] would allow the wife to "continue to realize some benefits for the investment in the [h]usband's practice made during the years of the marriage," and to "share in any increased profitability" of the practice.

The judge also found that the wife's interest in the Chatham property "was never relied upon as a financial resource by the parties during the marriage," and that its "impact on the taxes owed was negligible." Thus, the interest in the Chatham property was assigned wholly to the wife and did not form part of the divisible marital estate.

c. *Judge's rulings.* The trial judge awarded the husband the stipulated value of his interest in the dental practice, which was $476,000. The wife was awarded her interest in Pond View Associates. The judge ordered the sale of the marital home, with the first $238,000 in net proceeds going to the wife (representing a fifty percent share of the husband's interest in the dental practice), and the remainder divided evenly between the spouses.

The husband was ordered to pay base alimony in the amount of $8,500 per month, and "additional alimony equal to thirty (30%) percent of his gross income in excess of $250,000.00, from all sources . . . payable quarterly." To facilitate this "self-modifying" alimony order, the husband was directed to provide quarterly documentation of his income to the wife. Under the terms of the order, alimony is to continue until the first of four events: the wife's remarriage or cohabitation; the wife's death; the husband's death; or the "[h]usband's retirement as defined in the Act . . . , as it may be amended."

---

[8]The judgment ordered the husband to pay base alimony in the amount of $8,500 per month, plus "additional alimony equal to thirty (30%) percent of his gross income in excess of $250,000.00, from all sources . . . payable quarterly."

The husband's motion to stay the judgment was denied, and this appeal followed entry of the amended judgment.

d. *Alimony Reform Act of 2011*.[9] The Act modified G. L. c. 208 by essentially removing the substance of the alimony determination from G. L. c. 208, § 34, and placing it under new alimony provisions, G. L. c. 208, §§ 48 to 55. Section 34, as before the Act, continues to govern property division, by providing that a court with personal jurisdiction over the parties may, upon divorce or in an action thereafter, assign to either husband or wife "all or any part of the estate of the other, including but not limited to" enumerated "benefits, rights and funds accrued during the marriage." G. L. c. 208, § 34, as amended by St. 1990, c. 467. The Act also retains the feature of the prior law in which there are specific, mandatory factors that the judge must consider in making such a property division, as well as specific, discretionary factors that the judge may consider.[10] The Act altered neither the fundamental purpose nor the basic definition of alimony: "the payment of support from a spouse, who has the ability to pay, to a spouse in need of support." G. L. c. 208, § 48.

Three aspects of the Act are at issue in the instant case. First is the statutory formula providing that "the amount of alimony should generally not exceed the recipient's need or [thirty] to [thirty-five] per cent of the difference between the parties' gross incomes established at the time of the order being issued," G. L. c. 208, § 53(*b*), and the grounds for deviation from that

[9]See St. 2011, c. 124, §§ 1-7, codified at G. L. c. 208, §§ 34, 48-55. In this opinion, unless otherwise specified our citations to G. L. c. 208, § 34, are to that section as amended by St. 2011, c. 124, §§ 1, 2, and our citations to G. L. c. 208, §§ 48-55, are to those sections as appearing in St. 2011, c. 124, § 3.

[10]The mandatory factors for property division are now "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunity of each for future acquisition of capital assets and income, *and the amount and duration of alimony, if any, awarded under [G. L. c. 208, §§ 48-55].* In fixing the nature and value of the property to be so assigned, the court shall also consider the present and future needs of the dependent children of the marriage." (Emphasis supplied.) G. L. c. 208, § 34. The discretionary factors are "the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit." *Id.*

formula, G. L. c. 208, § 53(*e*). Second is the amendment to G. L. c. 208, § 34, governing property division, deeming "the amount and duration of alimony awarded under [§§ 48 to 55]" to be an additional mandatory factor now relevant to the equitable property distribution. Third is the interrelationship between the Act's presumptive time limits for alimony orders as determined by the length of the marriage, G. L. c. 208, § 49(*b*), its provision that "general term alimony"[11] must "terminate upon the payor attaining the full retirement age," G. L. c. 208, § 49(*f*), and the grounds for deviation from these presumptions, G. L. c. 208, § 53.

*Discussion.* Under prior law, St. 1974, c. 565, which was in effect (with occasional amendments) from October 19, 1974, to March 1, 2012, an award of alimony had to be based on the so-called mandatory and discretionary factors set forth in G. L. c. 208, § 34, although there was recognition that judges had "a large measure of discretion." *Rice* v. *Rice*, 372 Mass. 398, 400 (1977). See *Bianco* v. *Bianco*, 371 Mass. 420, 422-423 (1976) (confirming that under 1974 law, judges had broad discretion provided that they considered all statutory factors and made required findings of fact). Alimony and property division were closely connected, as evidenced by the fact that they were "governed by the same controlling factors" enumerated in § 34. Kindregan, Reforming Alimony: Massachusetts Reconsiders Postdivorce Spousal Support, 46 Suffolk U. L. Rev. 13, 23 (2013). "The new Alimony Reform Act of 2011 separates these factors into different sections of [c. 208], but keeps a connection by amending [§ 34] to provide that in addition to other factors, the court is to consider the 'amount and duration of alimony' when dividing property." *Ibid.* See note 10, *supra.*

In reviewing a property division under G. L. c. 208, § 34, or an alimony award under G. L. c. 208, §§ 48-55,[12] an appellate court conducts a two-step analysis. *Adams* v. *Adams*, 459 Mass.

---

[11]"General term alimony" is defined as "the periodic payment of support to a recipient spouse who is economically dependent." G. L. c. 208, § 48. See note 14, *infra.*

[12]The purposes and underlying principles of property division and alimony are distinct. *D.L.* v. *G.L.*, 61 Mass. App. Ct. 488, 508 (2004). However, in keeping with the 2011 amendment to § 34 expressly recognizing alimony as a mandatory factor to be considered for purposes of equitable distribution of the marital estate, we assess the fairness of "the financial arrangement as a

361, 371 (2011). First, we examine the trial judge's findings to determine whether all relevant factors were considered (and whether irrelevant factors were disregarded). See *Rice* v. *Rice, supra* at 401-402; *Bowring* v. *Reid,* 399 Mass. 265, 267 (1987). Next, we decide whether the rationale underlying the judge's conclusions is apparent and whether these "flow rationally from the findings and rulings." *Williams* v. *Massa,* 431 Mass. 619, 631 (2000). We do not substitute our judgment for that of the judge below but, rather, "scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts." *Iamele* v. *Asselin,* 444 Mass. 734, 741 (2005). Furthermore, because the judge has considerable discretion, determinations as to alimony and property division will not be reversed unless plainly wrong and excessive. *Redding* v. *Redding,* 398 Mass. 102, 107 (1986). Finally, in the present case, we are mindful that the judge was addressing difficult questions about the application of a new and comprehensive legislative scheme without the benefit of guidance from an appellate court.

a. *Alimony order.* 1. *Amount and form.* The Act makes no change in the fundamental purpose of alimony, which is to provide for postdivorce economic support of a spouse who was financially dependent during the marriage. *Gottsegen* v. *Gottsegen,* 397 Mass. 617, 623 (1986). See G. L. c. 208, § 48. Pursuant to the Act, a judge determining the form, amount, and duration of an alimony award must consider "the length of the marriage; age of the parties; health of the parties; income, employment and employability of both parties . . . ; economic and non-economic contribution of both parties to the marriage; marital lifestyle; ability of each party to maintain the marital lifestyle; lost economic opportunity as a result of the marriage; and such other factors as the court considers relevant and material." G. L. c. 208, § 53(*a*). Although the Act creates express guidelines to aid judges in fashioning alimony orders, it does not alter the principle that the central issue relevant to a

whole." *Grubert* v. *Grubert,* 20 Mass. App. Ct. 811, 822 (1985). See *Sampson* v. *Sampson,* 62 Mass. App. Ct. 366, 369 (2004), quoting from *D.L.* v. *G.L., supra* (alimony and property division are "interrelated remedies that cannot be viewed apart").

financial award is the dependent spouse's "need for support and maintenance in relationship to the respective financial circumstances of the parties." *Partridge* v. *Partridge,* 14 Mass. App. Ct. 918, 919 (1982).

General Laws c. 208, § 53(*b*), sets forth a formula for determining the amount of the alimony order, which, "[e]xcept for reimbursement alimony or circumstances warranting deviation for other forms of alimony, should generally not exceed the recipient's need *or* [thirty] to [thirty-five] per cent of the difference between the parties' gross incomes established at the time of the order being issued" (emphasis supplied). Our responsibility is to interpret the Act as written, assigning to each word and phrase its ordinary meaning unless the context requires otherwise and attaching significance to every word unless it produces an irrational result. See *Hinckley* v. *Retirement Bd. of Gloucester,* 316 Mass. 496, 500 (1944); *Holmes* v. *Holmes,* 467 Mass. 653, 659 (2014). See also G. L. c. 4, § 6, Third. The Legislature's decision to use the emphasized word "or" in this provision of the Act means that, "except for reimbursement alimony or circumstances warranting deviation for other forms of alimony," an alimony award that is equivalent to thirty to thirty-five percent of the difference between the parties' gross incomes as determined when the order issues will be deemed reasonable and lawful. G. L. c. 208, § 53(*b*). Furthermore, § 53(*e*) provides that when establishing an initial alimony award or in approving a modification of a prior alimony award, a judge may deviate from the "duration and amount limits" for general term alimony or rehabilitative alimony only if the judge makes "written findings that deviation is necessary." G. L. c. 208, § 53(*e*). Any such order deviating from the requirements of § 53(*b*) must be based on one or more of the first eight factors listed in § 53(*e*) or, "upon written findings, any other factor that the court deems relevant and material." G. L. c. 208, § 53(*e*)(9).

In reviewing the alimony order in this case, we first examine whether the judge considered all relevant factors required by § 53(*a*). The judge appropriately made reference in his findings to the over twenty-year length of the marriage, the spouses' ages, and their respective incomes, employment, and employability; however, it is not clear that he considered the ability of

each party to maintain the marital lifestyle. Although the parties' stipulation that they maintained a "comfortable" lifestyle during the marriage is incorporated by reference into the judge's findings, there is no finding with regard to the wife's ability or inability to maintain that lifestyle after the divorce.

It is undisputed that the wife has no income of her own, and we infer that the trial judge, in his discretion, determined the husband's annual income to be $250,000.[13] The alimony order of $8,500 per month is nearly forty-one percent of the difference in incomes, thus exceeding the thirty to thirty-five percent range set forth in § 53(*b*). While such an award may nonetheless be reasonable and lawful under § 53(*b*) if based on a specific determination of the recipient's need (and assuming a proper consideration of the other spouse's ability to pay), we cannot say that is the case here because the judge made no finding as to the amount of alimony the wife needed in order to maintain the lifestyle she enjoyed during the marriage. See *Heins* v. *Ledis*, 422 Mass. 477, 484 (1996) ("An award of alimony is improper absent a finding of financial need on the part of the recipient spouse"). Because the order for general support alimony as presently constituted does not flow rationally from the judge's findings, it is not in compliance with § 53(*b*). See *Bowring*, 399 Mass. at 267; *Williams*, 431 Mass. at 631.

Furthermore, we are unable to uphold the so-called "self-modifying" portion of the alimony order. See *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 811 (1985) ("[T]he financial arrangement, taken as a whole, did not adequately take into account traditional alimony considerations and resulted in an inequitable award"). It appears that the judge intended this

---

[13]The record indicates, and the parties agree, that in the year prior to trial, the husband's annual income declined significantly from what it had been in prior years, due in part to the fact that the "buy-in" payments from his new partner, which had provided an additional $90,000 of income each year for a five-year period, ended in 2010. There also was evidence that the husband's dental practice generated declining income in 2010 and 2011 as a result of the economic recession, and that the salaries paid to the husband and his partner were lower in 2011 compared to 2010. Our inference that the judge impliedly found the husband's annual income at the time of the order to be $250,000 is based on these considerations, representations made by counsel during the oral argument, and the judge's decision to set $250,000 as the threshold for self-modification of the alimony order.

provision to allow the wife to share in the future earnings of the husband's dental practice, in recognition of her contributions during the marriage. However, as the husband correctly points out, § 53(b) requires the judge to determine the parties' respective needs and incomes *at the time the order is issued.* It is also significant that the Act recognizes for the first time in Massachusetts four different types of alimony awards: "general term alimony,"[14] "rehabilitative alimony,"[15] "reimbursement alimony,"[16] and "transitional alimony."[17] On the record before us, the judge's self-modifying alimony does not fit into one of the four types of alimony awards authorized by the Act.

Moreover, there are two features of the judge's self-modifying order that cannot be reconciled with the Act.[18] First, under the Act as well as traditional Massachusetts practice, a modification of an alimony order must be based upon a material change in

[14] "General term alimony" is defined as "the periodic payment of support to a recipient spouse who is economically dependent." G. L. c. 208, § 48.

[15] "Rehabilitative alimony" is defined as "the periodic payment of support to a recipient spouse who is expected to become economically self-sufficient by a predicted time, such as, without limitation, reemployment; completion of job training; or receipt of a sum due from the payor spouse under a judgment." G. L. c. 208, § 48.

[16] "Reimbursement alimony" is defined as "the periodic or one-time payment of support to a recipient spouse after a marriage of not more than [five] years to compensate the recipient spouse for economic or noneconomic contribution to the financial resources of the payor spouse, such as enabling the payor spouse to complete an education or job training." G. L. c. 208, § 48.

[17] "Transitional alimony" is defined as "the periodic or one-time payment of support to a recipient spouse after a marriage of not more than [five] years to transition the recipient spouse to an adjusted lifestyle or location as a result of the divorce." G. L. c. 208, § 48.

[18] As explained earlier, the alimony award in this case cannot stand because it is neither based on a judicial determination of need, see *Heins*, 422 Mass. at 484, nor within the thirty to thirty-five percent range set forth in G. L. c. 208, § 53(b). However, a general term alimony award established as a percentage of income and not as a fixed amount may be valid in some circumstances. See *Wooters* v. *Wooters*, 42 Mass. App. Ct. 929, 930 (1997) ("[T]he health of the husband and the fluctuations in his income were the reasons why the judge made a percentage award"). Likewise, in a "special case," a general term alimony award containing a "self-executing formula" that is based on the recipient spouse's needs may be permissible. See *Stanton-Abbott* v. *Stanton-Abbott*, 372 Mass. 814, 817 (1977) (upholding self-executing formula related to retail price index in case where one party resided in United States and other party resided in England).

the parties' circumstances. See G. L. c. 208, § 49(e) ("Unless the payor and recipient agree otherwise, general term alimony may be modified in duration or amount upon a material change of circumstances warranting modification"); Kelley v. Kelley, 64 Mass. App. Ct. 733, 739, 740 (2005) (although power of Probate and Family Court to modify alimony order is "broad and general," "no modification can be made unless the party seeking modification shows a change of circumstances since the entry of the earlier judgment," quoting from Binder v. Binder, 7 Mass. App. Ct. 751, 754 [1979]; "The proper focus of the modification inquiry must be whether there has been a material change in circumstances"). Ordinarily, a party seeking upward modification must show both increased need and ability of the obligor to satisfy that need. Here, however, the self-modifying feature of the order, which requires the husband to pay additional alimony in the amount of thirty percent of income earned beyond $250,000, is not based on a judicial determination, supported by subsidiary findings of fact, of an increase in the wife's need accompanied by the husband's ability to provide for the same. See Pierce v. Pierce, 455 Mass. 286, 293 (2009) ("[E]very modification judgment requires findings of fact, conclusions of law, and the exercise of discretion"). While the husband would need to file a complaint for modification and show a change in circumstances to reduce his alimony obligation, under the self-modifying order the wife has no corresponding burden and will automatically realize the benefit of any increase to the husband's income — whether from the dental practice or from any other source.

Second, the order is inequitable because it requires only the husband to disclose quarterly income to the wife, but imposes no reciprocal duty on the wife.[19] Under this arrangement, the husband is deprived of information with which he could determine whether a material change has occurred in the wife's needs or income; indeed, without a corresponding duty on the wife's part to disclose, he has no way to learn of any earnings

[19]Although the judge declined to attribute income to the wife, her recent real estate coursework and fundraising certification were evidence that she has the potential for future earnings that could materially influence the husband's alimony obligation. Yet under the terms of the current order, the wife is under no obligation to disclose any such earnings to the husband.

she may have in the future. Under the order, the wife may monitor the husband's compliance and will benefit from automatic increases in her alimony award without the need to return to court; the husband, on the other hand, must file a complaint to have the order modified, while simultaneously lacking access to the information required to prove a material change in circumstances. For these reasons, the order for self-modifying alimony is not consistent with the requirements of G. L. c. 208, § 53. See *Bowring*, 399 Mass. at 267-268. The alimony order, which is contained in paragraph 16 of the amended judgment, must be vacated.

2. *Duration.* As created by the Act, G. L. c. 208, § 49, sets forth presumptive time limits for orders of general term alimony, based upon the length of the marriage.[20] Alimony orders may be issued that are effective "for an indefinite length of time" where the length of the marriage, as here, was more than twenty years. G. L. c. 208, § 49(*c*). However, the Act qualifies the duration of an "indefinite" alimony order: notwithstanding § 49(*c*), § 49(*f*) provides by default that a general term alimony order terminates "upon the payor attaining the full retirement age." In turn, "[f]ull retirement age" is generally defined to mean "the payor's normal retirement age to be eligible to receive full retirement benefits under the United States Old Age, Survivors, and Disability Insurance program" (Social Security). G. L. c. 208, § 48. Deviation from the § 49(*f*) default duration at the time of the issuance of the general term alimony order requires a showing of good cause and specific written findings by the judge. G. L. c. 208, § 49(*f*)(1). A later extension of the duration of an existing alimony order requires good cause shown and written findings of a material change in circumstances and

---

[20]"Length of the marriage" is defined by the Act as "the number of months from the date of legal marriage to the date of service of a complaint or petition for divorce or separate support duly filed in a court of the commonwealth or another court with jurisdiction to terminate the marriage; provided, however, that the court may increase the length of the marriage if there is evidence that the parties' economic marital partnership began during their cohabitation period prior to the marriage." G. L. c. 208, § 48. By this definition, the length of the marriage here was twenty-one years, from the date of marriage, September 18, 1988, to the date of the filing of the wife's complaint for divorce, October 28, 2009.

of reasons for the extension supported by clear and convincing evidence. G. L. c. 208, § 49(f)(2).

In the present case, unless preceded by either party's death or the wife's cohabitation, the judge's order directs the husband to continue paying alimony until his "retirement as defined in the Act Reforming Alimony of 2011, as it may be amended." The judge did not make a written explanation of the precise intent of the order or suggest why he may have intended to deviate from the § 49(f) default that the order will terminate upon the husband's reaching "full retirement age." The trial transcript suggests to us that the judge was aware of the Act's default duration and intended for it to apply in this case.[21] The husband nonetheless argues that the order is ambiguous because the Act does not define the term "retirement," and the order could therefore be read to terminate instead upon the husband's *actual* retirement. Because the order could be read as the husband suggests and because the case must be remanded in any event, we also vacate and remand this portion of the amended judgment to enable the judge to eliminate the ambiguity.

b. *Assignment of property.* Finally, we turn to the primary aspect of the division of the marital estate challenged on appeal, namely, the exclusion of the wife's interest in the Chatham property from the divisible marital estate. A party's estate includes all property to which she or he holds title, regardless of the source. *Williams*, 431 Mass. at 625. The Act does not alter the purpose of a property division under G. L. c. 208, § 34: "to recognize and equitably recompense the parties' respective contributions to the marital partnership." *Kittredge* v. *Kittredge*, 441 Mass. 28, 44 (2004), quoting from *Heacock* v. *Heacock*, 402 Mass. 21, 24 (1988). Also, under prior law as well as the Act, whether a spouse's interest in property is part of the marital

---

[21]The judge said the following during a discussion with the wife's counsel:

"[T]he general alimony is still limited, correct? . . . To his normal retirement age. . . . [Alimony] terminates as of his presumptive retirement date of whatever it may be, whether it's 66 or 67, as defined by the statute. And then it becomes [the wife's] burden to then show that there has been a change in circumstances. And even if [the husband is] working, there has to be a significant change of circumstances."

estate is a question of law. *Lauricella* v. *Lauricella*, 409 Mass. 211, 213 & n.2 (1991).[22]

Section 34 contains both mandatory and discretionary factors that must be considered, see *Drapek* v. *Drapek*, 399 Mass. 240, 243 (1987), and allows a judge to "assign to either husband or wife all or any part of the estate of the other." In addition to the mandatory factors present in the prior version of § 34, the Act added for consideration "the amount and duration of alimony, if any." St. 2011, c. 124, § 2. These factors "reflect a view of marriage as an implied partnership for the purposes of distribution of property." *Savides* v. *Savides*, 400 Mass. 250, 252 (1987). Since the adoption of the Act, we have reiterated that "[t]he parties' respective contributions to the marital partnership remain the touchstone of an equitable division of the marital estate." *T.E.* v. *A.O.*, 82 Mass. App. Ct. 586, 597 (2012), quoting from *Moriarty* v. *Stone*, 41 Mass. App. Ct. 151, 157 (1996). When a judge has considered all the required factors and they are adequately reflected in his findings and rulings, they will not be disturbed on appeal unless they are "plainly wrong and excessive." *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 620 (1987), quoting from *Redding*, 398 Mass. at 107-108.

---

[22]In making the determination of what property is included in the marital estate, we have "not been bound by traditional concepts of title or property," *Adams* v. *Adams*, 459 Mass. 361, 373 (2011), quoting from *Baccanti* v. *Morton*, 434 Mass. 787, 794 (2001), but "we have drawn a line around certain interests that are so speculative as to constitute nothing more than expectancies," *Adams, supra* at 374. See and compare *Drapek* v. *Drapek*, 399 Mass. 240, 244 (1987) ("[T]he present value of future earned income is not subject to equitable assignment under G. L. c. 208, § 34"), with *Baccanti, supra* at 798, 799 n.7 (addressing status of "stock options" and stating that [1] "[s]tock options, as property to which a spouse holds title, must be treated the same as other marital property and considered part of the marital estate even if given for past services performed prior to the marriage"; and [2] if "the options were given for efforts to be expended after the marriage, in order to include them in the marital estate, the judge must determine whether the options were nonetheless given for efforts attributable to the marital partnership"), and *Adams, supra* at 375 ("[A]n interest in an established partnership, though subject to degrees of uncertainty and the contingency of future performance, has more than theoretical value"; "a partnership interest is akin to other inchoate or uncertain assets we have assigned to the marital estate consonant with § 34"). See also *Wooters* v. *Wooters*, 74 Mass. App. Ct. 839, 841-843 (2009) (explaining complexity of properly characterizing "stock options," and concluding that exercised stock options were part of payor's "gross annual employment income" under alimony provision).

Here, the judge considered nearly all of the statutory factors. See *Bianco*, 371 Mass. at 423. However, the lack of specific findings with regard to the parties' financial needs is problematic. Additionally, it is not clear from the judge's decision that his alimony order was properly factored into his order for the division of the marital property, as § 34 requires. See *Grubert*, 20 Mass. App. Ct. at 811.

Between them, the spouses owned three principal assets with a total stipulated value of $1.4 million: the marital home ($670,000); the husband's interest in his dental practice ($476,000); and the wife's one-third interest in Pond View Associates, the partnership owning the Chatham property ($300,000). We note in passing that both the husband's interest in the dental practice and the wife's interest in the Chatham property were, at least in part, gifted to the respective spouses during the marriage by family members, and enjoyed by the family during the marriage. Though the husband was awarded his interest in the practice, the wife was duly compensated for her share of that interest with $238,000 in liquidated funds from the sale of the home. In contrast, the husband received no compensation for the wife's interest in the Chatham property, which was excluded entirely from the marital estate. The judge's reasoning was that the Chatham property "was never relied upon as a financial resource by the parties during the marriage." The court further found that "[w]hile it was listed on a few of the joint income tax returns, the impact on the taxes owed was negligible."

In view of the family's enjoyment of the Chatham property during the marriage — contributed by the wife to the marital partnership — the exclusion of the wife's interest in the Chatham property cannot be sustained. We think the judge took too narrow a view of "financial reliance" upon an asset, evidently basing his analysis solely on the asset's impact on the family's tax obligations. It is undisputed that the parties and their children spent annual summer vacations at the Chatham property. The wife's one-third share of Pond View Associates was valued at $300,000, which results in an approximation of the value of the

property at $900,000.[23] Had the wife's interest in this property been unavailable to the family during the marriage, the parties would have incurred significant costs to rent a comparable property for summer vacations. It follows that the wife's interest in the Chatham property provided tangible financial value to the family during the marriage. We therefore conclude that the judge's finding that the parties never relied on the wife's interest in Pond View Associates as a financial resource during the marriage is not supported by the evidence. Consequently, paragraph 6 of the amended judgment, which excludes this property from the marital estate, must be vacated.

*Conclusion.* The comprehensive Alimony Reform Act of 2011 makes important changes in our law, without unduly limiting judicial discretion so long as judges make detailed subsidiary findings of fact. The judge here faced the formidable task of applying the new law without the benefit of appellate guidance. In this case, the order dividing the marital estate under G. L. c. 208, § 34, and the order awarding general term alimony under G. L. c. 208, §§ 48-55, must be reconsidered and revised in large part because the findings that might have supported such orders are absent. Paragraphs 6 and 16 of the amended judgment of divorce nisi are vacated. The case is remanded to the Probate and Family Court for further proceedings consistent with this opinion.[24]

*So ordered.*

---

[23]The Chatham property has potential to generate significant rental income. We take notice of the fact that Chatham is a popular tourist destination on Cape Cod with many attractive recreational venues.

[24]Nothing in this opinion prevents the judge from altering other paragraphs of the amended judgment as appropriate to achieve an alimony and property division scheme that complies with the Act and this opinion, including further consideration of the decision to award to the wife all of the personalty she inherited during the marriage and the decision to treat monies from the husband's profit sharing plan as an offset to account for the wife's use of liquid marital assets during the pendency of the divorce.