NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

23-P-55                                          Appeals Court

MICHAEL A. TRETHEWEY  vs.  ROSALIA F. TRETHEWEY.

No. 23-P-55.

Middlesex.     November 9, 2023. - April 24, 2024.

Present:  Ditkoff, Englander, & Walsh, JJ.


Divorce and Separation, Judgment, Alimony, Attorney's fees, Division of property.  Words, "Double dipping."


Complaint for divorce filed in the Middlesex Division of the Probate and Family Court Department on April 1, 2015.

The case was heard by Mary Rudolph Black, J.


Martin F. Kane (Robert E. Curtis, Jr. also present) for the husband.
David E. Cherny (Thomas D. Ritter also present) for the wife.


ENGLANDER, J.  The husband in this divorce case challenges

a judgment of divorce nisi issued by a judge of the Probate and

Family Court, principally on the ground that it reflects

impermissible "double dipping," or double counting, of one of

the spouse's assets -- treating the entire asset both as the

husband's income for alimony purposes, and as a divisible asset of the marital estate.  The husband contends that this double counting produced significant inequity and that the divorce judgment accordingly must be vacated.

At the time the husband filed for divorce in 2015, he had worked as a financial advisor for roughly twenty years.  During trial, in mid-2018, the husband changed jobs and began working for Wells Fargo Advisors (Wells Fargo).  When the husband began working for Wells Fargo, he received a $5 million "Transitional Bonus" as part of his compensation package.  The actual structure of the $5 million was not a bonus, however; rather, it reflected the advance payment of a portion of the husband's anticipated income from Wells Fargo, which he could earn in the amount of $51,550.04 per month over the ensuing nine-plus years (112 months).  The husband simultaneously executed a $5 million promissory note with Wells Fargo -- a debt that would be incrementally forgiven at the same rate of $51,550.04 per month, as long as the husband met certain business benchmarks.

The alleged double dipping arises from the judge's treatment of the $5 million Transitional Bonus.  On the one hand, in calculating the husband's income for purposes of alimony, the judge counted the approximately $51,000 per month of loan forgiveness (over $600,000 annually) as income, as if the husband were receiving a payment of that money on a monthly

basis.  On the other hand, in determining the value of the
parties' marital assets, the judge also counted what remained of
the $5 million advance payment (approximately $3.2 million as of
the close of trial in July 2019), and divided that $3.2 million
account with the parties' other assets, awarding approximately
fifty-three percent of the total assets to the wife.  Also
relevant, the judge in essence separated this asset from its
associated liability under the promissory note and assigned the
entire liability under the note (well over $4 million as of the
close of trial) to the husband.

On the record before us, it was error for the judge to
treat the $5 million advance in this fashion -- double dipping
or arguably even triple dipping -- thereby disadvantaging the
husband with respect to the Transitional Bonus threefold.
Because the resulting award was neither consistent with the
judge's stated rationale -- which did not address the double dip
-- nor equitable, we amend the divorce judgment to eliminate the
double dipping problem.[1]

Background.  We summarize the relevant facts as found by
the judge, supplementing them with undisputed evidence in the
record.  See Pierce v. Pierce, 455 Mass. 286, 288 (2009).  The

---

[1] As discussed below, we also vacate the judge's award of
attorney's fees to the wife, because the husband did not have a
meaningful opportunity to respond to the wife's motion.  We
otherwise leave the divorce judgment undisturbed.

parties were married for over twenty years and had three children together during the marriage. As of the close of trial, the two eldest children were emancipated and the youngest child remained dependent on the parties for support. In April 2015, the husband filed a complaint for divorce. After extensive pretrial proceedings and a nineteen-day trial, which took place between November 2017 and July 2019, the judge issued the divorce judgment on May 26, 2021, accompanied by eighty-seven pages of findings of fact and conclusions of law.

The husband was employed as a financial advisor throughout the trial. Pursuant to the June 2018 employment contract that the husband signed with Wells Fargo, his compensation package included the $5 million Transitional Bonus -- which, as described above, would be earned in the amount of $51,550.04 over the ensuing 112 months, contingent on the husband meeting an annual revenue threshold.[2] The husband, in turn, executed a $5 million promissory note to Wells Fargo "payable in 112 equal monthly installments." Wells Fargo wired the $5 million to the husband in July 2018. The husband's receipt of the $5 million was tied to the debt created through the promissory note such

_____

[2] The $51,550.04 per month for 112 months included interest the husband owed on the $5 million loan. As indicated, this arrangement is not a bonus in the traditional sense of additional compensation that had been fully earned. See Jones v. Jones, 101 Mass. App. Ct. 673, 681-682 (2022) (discussing various types of "bonuses").

that, as the husband earned each installment of approximately $51,000, his debt under the note was reduced by that same amount. This arrangement allowed the husband immediate access to $5 million that he would earn over the next nine years at Wells Fargo, amounting to additional annual income of approximately $600,000. Importantly, if the husband's employment with Wells Fargo ended before the note was satisfied, Wells Fargo was entitled to deem the outstanding balance on the note immediately due.

The judge expressly included the monthly loan forgiveness of the Transitional Bonus when calculating the husband's income for alimony purposes. As of the final day of trial, the judge found that the husband's total gross annual income was $1,282,684. Roughly half of this amount was traditional income, but the Transitional Bonus income represented approximately $600,000 of the $1,282,684. The divorce judgment provided the wife with alimony in the amount of $35,499 per month or $425,988 annually, which represented approximately thirty-three percent of the husband's total gross income, inclusive of the income from the Transitional Bonus.

In dividing the marital estate, the judge stated that it was her intention that the wife "receiv[e] a slightly larger portion of the marital estate than [the] [h]usband." The judge itemized each of the parties' assets and their respective values

as of the last day of trial, and found that the parties' combined assets totaled $8,421,857.82.  This total included the balance of the husband's Wells Fargo brokerage checking account, which held what remained of his $5 million Transitional Bonus.  As of the last day of trial, the balance of this account was $3,223,415.  The judge divided this $8.4 million in combined assets between the parties; all told, the husband was allocated forty-seven percent, and the wife fifty-three percent, of the $8.4 million.[3,4]

In summary, the judge treated the Transitional Bonus both as a divisible asset and as income for purposes of calculating alimony.  The judge also allocated the liability associated with the promissory note to the husband in its entirety, even though

---

[3] As is common, the judge catalogued and assigned the parties' assets to one spouse or the other.  Then, to reach the desired fifty-three/forty-seven split, the judge ordered the husband to pay the wife an additional sum of $675,000, payable in three installments of $225,000.  We note an apparent typographical error in the divorce judgment, which states that "[the] [h]usband shall pay to [the] [w]ife the sum of $775,000." The judgment elsewhere repeatedly affirms that each of the three installments would be in the amount of $225,000, totaling $675,000.

[4] The husband argues that the relative proportions of the estate allocated to each party change dramatically when the parties' liabilities are taken into account.  The judge ordered that "each party shall be solely responsible" for their own liabilities.  As of the final day of trial, the husband still owed well over $4 million under the promissory note (in addition to other liabilities) and the wife carried total liabilities of $488,799.70.

this liability arose from the $5 million advance, and even though the wife received a portion of that advance (fifty-three percent of the $3.2 million) through the asset division.

Discussion. 1. Double dipping. We first address the husband's argument that the financial provisions of the judgment must be reversed or vacated due to the double dipping as to his Transitional Bonus. "In reviewing a property division under G. L. c. 208, § 34, or an alimony award under G. L. c. 208, §§ 48-55, an appellate court conducts a two-step analysis." Hassey v. Hassey, 85 Mass. App. Ct. 518, 523 (2014). We first consider the trial judge's findings "to determine whether all relevant factors were considered." Id. at 524. Second, "we decide whether the rationale underlying the judge's conclusions is apparent and whether these 'flow rationally from the findings and rulings.'" Id., quoting Williams v. Massa, 431 Mass. 619, 631 (2000). Here, we are concerned with the second step in the § 34 analysis, because the judge's rationale does not discuss the double dip, and thus does not attempt to explain or rationalize how it could be equitable.

The term "double dipping" describes "the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations." Sampson v. Sampson, 62 Mass. App. Ct.

366, 374 (2004), quoting Champion v. Champion, 54 Mass. App. Ct. 215, 219 (2002).  A paradigm of double dipping would include when an asset -- for example, one spouse's retirement account -- is divided as part of the marital estate, but all of the income from the retirement account is still considered income of the supporting spouse for alimony purposes.  But although our case law eschews double dipping, the cases also reveal that the principle is not easily applied.  See Sampson, supra at 377 (vacating judgment based on what "appear[ed]" to be "double counting").  We have said that what constitutes double dipping "is not easily defined, and whether it is improper in a particular case must be carefully assessed."  Wasson v. Wasson, 81 Mass. App. Ct. 574, 579 (2012).

Part of the difficulty in identifying and defining double dipping arises from the wide range of financial structures that can be both an asset and a source of future income for alimony purposes.  Sometimes, after an asset is separated by division in a divorce judgment, the portion of the asset remaining with the supporting spouse can still be a source of income for alimony purposes.  The Supreme Judicial Court recognized this point in Dalessio v. Dalessio, 409 Mass. 821, 828 (1991), S.C., 413 Mass. 1007 (1992):

> "So long as it is possible . . . to identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any

alimony or support obligations (thus avoiding redistribution by an alimony or support order of specific assets that already have been equitably assigned), there is nothing improper about including a particular asset within a spouse's assignable estate, assigning part of it, and then counting its remainder for alimony . . . purposes."

In Dalessio, the husband asserted an alleged double dip where the trial judge assigned a portion of the husband's interests in the proceeds of a personal injury lawsuit to the wife and then based the husband's child support order on a portion of the proceeds that remained with the husband. Dalessio, 409 Mass. at 827-828. The court concluded that because the proceeds of the lawsuit had already been divided and the child support order was based only on a portion of the proceeds that had been assigned to the husband, there was no impermissible double dipping. Id. at 828. See Adams v. Adams, 459 Mass. 361, 394 (2011), S.C., 466 Mass. 1015 (2013) (making same point where division of assets involved one spouse's partnership interest in financial services firm).[5]

---

[5] Compare Sampson, 62 Mass. App. Ct. at 375-377 (possible inequitable double dipping where wife's business interest was included in marital estate and her business income, which was used to calculate support, was not excluded from business valuation for property division purposes), with Champion, 54 Mass. App. Ct. at 221-222 (no inequitable double dipping where support order was based on husband's projected future earnings from business, which earnings were not considered in establishing business's value for property division purposes).

The facts of the instant case, however, are materially different from Dalessio and Adams.  Here, the judge considered the portion of the $5 million Transitional Bonus earned each month as income for alimony purposes.  This determination was appropriate as regards alimony -- the $5 million was being incrementally earned in the amount of approximately $600,000 per year.  But the judge erred in also treating what remained of the unearned portion of the $5 million as an asset of the marital estate, that was then divided with the wife.  The wife received fifty-three percent of the $3.2 million that remained in the husband's Wells Fargo account (approximately $1.7 million).[6]  That money, however, had not yet been earned by the husband.  Furthermore, because the money had not yet been earned, it was also a liability of the marital estate, and the judge left that liability entirely with the husband.  In essence, the judge treated the money in the Wells Fargo account both as an asset that had already been earned (for purposes of dividing the marital estate) and as a nonasset (i.e., income) that would be earned at approximately $51,000 per month (for alimony purposes).

---

[6] The wife argues that the husband was assigned the entire remaining $3.2 million advance because he retained his Wells Fargo account in the asset division, but that is misdirection.  The $3.2 million account balance was included in the judge's computation of the marital estate assets, and the marital estate was divided fifty-three percent to the wife.

Accordingly, while we are mindful that a judge "has broad discretion when awarding alimony and dividing marital assets," Heins v. Ledis, 422 Mass. 477, 480-481 (1996), here the judge's award of the $1.7 million to the wife from the Wells Fargo account amounts to an error of law.  Indeed, this is not just a case where the wife was awarded a portion of a marital asset, where the income generated by the wife's portion was also treated as the husband's income for alimony purposes.  As discussed above, such would be classic double dipping, which is disfavored and unlikely to be valid even if the judge provides a rationale.  See Adams, 459 Mass. at 394.  In this case, however, the inequity ran even deeper; the money transferred to the wife should not have been regarded as part of a divisible marital asset free from its liability, as the money was in fact anticipated but as yet unearned income, not an asset of the estate free and clear of an equal liability owed.  See Openshaw v. Openshaw, 493 Mass. 599, 614-615 (2024) (trial judge erred in assigning majority of marital debt to one spouse, where resulting "net division" of marital estate was inconsistent with judge's intended asset division).  The result was, in essence, the same problem identified in Dalessio -- redistribution, by the assignment of assets, of money already allocated to support.

Finally, we note that upon considering the equities in this case, the double counting at issue does not "flow rationally

from the [judge's] findings and rulings." Hassey, 85 Mass. App. Ct. at 524, quoting Williams, 431 Mass. at 631. As noted, the judge's detailed findings do not "demonstrate that [s]he considered whether double dipping had occurred, and whether h[er] orders were consistent with the principles enunciated in [Dalessio]." Sampson, 62 Mass. App. Ct. at 377. The decision to include the $3.2 million in the marital estate was error, and the award of fifty-three percent of that amount to the wife ($1.7 million) is accordingly reversed.

2. Dates of identification and valuation. The husband argues that the judge also erred in determining the date of identification of the assets in the marital estate and the date of valuation of the marital estate. As to the date of identification, the husband suggests that the date the parties first separated (in 2015) "may well be" the proper date. And as to the date of valuation, he argues that certain assets should have been valued as of the date of judgment (in 2021), rather than the end of trial (in 2019).

Neither argument has merit. The argument that the assets should have been identified on the date of separation does not include any contentions as to what the specific alleged error was, how the husband was harmed by it, or what remedy (assuming error) might be appropriate. The argument regarding the date of valuation is only slightly more supported. Both parties seem to

agree that the judge's date of valuation of the marital estate was as of the end of the divorce trial, consistent with established practice in Massachusetts.  See Caffyn v. Caffyn, 70 Mass. App. Ct. 37, 44 (2007); Moriarty v. Stone, 41 Mass. App. Ct. 151, 154 (1996).  The only exception to this date of valuation pertained to certain retirement accounts, which would be valued "as of the date of Judgment."  The husband now argues that certain other assets should have been valued as of the date of judgment, but considering the well-settled practice of valuing the marital estate as of the date of trial, and the discretion held by trial judges as to dates of valuation, Savides v. Savides, 400 Mass. 250, 253 (1987), we are not convinced that the judge's determinations here produced a division that was "plainly wrong and excessive." Redding v. Redding, 398 Mass. 102, 107 (1986), quoting Ross v. Ross, 385 Mass. 30, 38 (1982).

3.  Attorney's fees.  Next, the husband argues that the judge's award of $130,200 in attorney's fees to the wife violated his due process rights, because he was not afforded a meaningful opportunity to be heard before the fees were awarded. It is true that liability for attorney's fees may not be imposed without due process, Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 808 (1985); In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d 603, 614 (1st Cir.

1992), and it appears, as well, that the husband was not afforded a full opportunity to respond to the wife's fee motion. The judge allowed the wife to file her motion for fees, but rejected the filing of the husband's proffered opposition. And the judge declined to hold a hearing on the merits of the motion. One of the fundamental elements of due process is a meaningful opportunity to be heard, Matter of Kenney, 399 Mass. 431, 435 (1987), citing Goldberg v. Kelly, 397 U.S. 254, 267 (1970), and we are not satisfied that the husband had such an opportunity here. Accordingly, although a judge has considerable discretion in awarding attorney's fees and "[s]uch an award is 'presumed to be right and ordinarily ought not to be disturbed,'" Moriarty, 41 Mass. App. Ct. at 159, quoting Ross, 385 Mass. at 39, here we think the prudent course is to vacate the fee award, so that the judge can revisit the question after the husband responds to the fee request.

4. Denial of the stay pending appeal. The husband's final argument attacks the decisions of two Appeals Court single justices that denied the husband's requests for a stay of the divorce judgment pending appeal. We do not address these arguments as they are moot -- the case has now been presented to this panel, and indeed, this panel has already granted the

husband certain relief in its interim order of November 15, 2023.[7]

Conclusion.[8]  In sum, the divorce judgment is erroneous in that the money from the Transitional Bonus was counted for purposes of alimony, and also divided in the property division and a portion awarded to the wife.  The remedy for this error is to reverse the award to the wife from the marital estate of what amounted to approximately $1.7 million from the Wells Fargo account.  With that award reversed, the divorce judgment no longer suffers from double counting and the result is consistent with the judge's rationale.[9]  We also vacate the award to the

---

[7] Shortly after this appeal was argued and while the matter was under advisement, this panel entered a limited order temporarily staying those provisions of the divorce judgment that required the husband to transfer assets to the wife (specifically excluding alimony), pending further order of this court.

[8] The husband also noticed appeals from a contempt judgment (issued the same day as the divorce judgment) and what he acknowledged is likely a nonappealable interlocutory order related to a subsequent complaint for contempt.  He makes no specific argument concerning the contempt judgment or the subsequent interlocutory order, and he does not request any relief in connection with either.  Accordingly, the appeals from the contempt judgment and the interlocutory order are waived (to the extent that the latter was properly before us, which we do not suggest).  See Board of Registration in Med. v. Doe, 457 Mass. 738, 743 n.12 (2010).

[9] Ordinarily we would remand the issue of remedy for the double counting to the trial judge, but in the particular circumstances here we conclude that a remand for that purpose is both undesirable and unnecessary.  The parties and the judge

wife of $130,200 in attorney's fees.  All other aspects of the divorce judgment, including in particular alimony, remain undisturbed by this decision.  We leave it to the Probate and Family Court judge to determine the specific means for payment of the $1.7 million, and we remand for that purpose,[10] as well as to revisit the wife's fee request.

The appeals from the single justice orders dated January 23, 2023, March 15, 2023, and March 23, 2023, are dismissed as moot.

<u>So ordered</u>.

---

have already had nineteen days of trial.  The judge's rationale stated that her intent was to award slightly more than one-half of the marital estate to the wife.  The error here was in counting the $3.2 million Wells Fargo account as part of the marital estate when it was not free and clear of the corresponding liability.  The remedy we declare eliminates the error, and results in a division of assets consistent with the judge's stated intent.

[10] We note that apparently, the husband never paid $450,000 of the $675,000 he was ordered to pay by the divorce judgment, so that amount (plus any appropriate interest thereon) appears to be available to the wife as an offset.  Any other obligations that the husband owes under the judgment but that remain unpaid, including unpaid alimony, would also be available as offsets.