NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-438

DOROTHY LUCK[1]

vs.

MICHAEL LUCK.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Dorothy Luck (wife), and the defendant, Michael Luck (husband), were married for twenty-eight years.  In 2018, citing an irretrievable breakdown of the marriage, the wife filed a complaint for divorce.  See G. L. c. 208, § 1B. Following a trial, the judge issued a divorce judgment (original judgment) along with findings of fact, conclusions of law, and a rationale.  After the husband moved to alter or amend the judgment, the judge issued an amended judgment.  On appeal, the wife challenges the amended judgment, arguing that the judge erred in eliminating the annual adjustments to the original

---

[1] On June 12, 2023, Dorothy Luck filed a certificate of change of name to Dorrie Marie Luck.

judgment's percentage-based alimony award.  The wife also contends that the judge erred in finding her in contempt of the original judgment for failing to pay a debt owed to her parents and for failing to pay her share of the children's student loans.  Because the judge did not provide a rationale for why she amended the alimony award, we vacate so much of the amended judgment that eliminated the annual adjustments and remand for additional findings.  In addition, we reverse so much of the contempt judgments as related to the wife's failure to pay the debt owed to her parents and affirm the remainder of those contempt judgments.[2]

Background.  The parties married in 1994 and had three children.  After their first child was born in 1996, the wife left her job as a teacher and became the primary caretaker of the marital home and the children.  Two years later, the husband enrolled in medical school, taking out student loans and loans from his mother.  The parties initially lived a frugal lifestyle.  After finishing medical school and his residency, the husband worked as a radiologist in Bedford, New Hampshire.

_____

[2] The portion of the November 24, 2023 contempt judgment adjudicating the wife guilty of contempt is reversed.  That portion appears to adjudicate the wife guilty of contempt on her own complaint for contempt.  The November 28, 2023 contempt judgment addresses the wife's failure to pay the debt owed to her parents and her share of the children's student loans.

From 2008 to 2015, his salary increased from $300,000 to $413,800.  During the middle part of their marriage, the parties lived a middle-class lifestyle using money from their respective families.  They lived beyond their means and did not accumulate significant savings or assets.  In 2015, while the wife stayed in Massachusetts, the husband began work at a radiology clinic in Houston, Texas, where he received substantial increases in salary and other compensation.  From 2015 to 2021, his base salary increased from $400,000 to $880,000.

Toward the end of their marriage, the parties lived an upper middle-class lifestyle.  Even though the husband was earning more, the parties incurred debt to maintain this lifestyle.  They obtained funds from their families to buy four homes over the course of their marriage, and they took out loans to send their children to private high schools and colleges. They withdrew money from the husband's individual retirement account and the wife's trust account, and continued to request funds from family members to pay for their living expenses.  At the time of trial, the parties had various outstanding debts, including credit card debt, personal loans from family members, student loans, and legal fees.

Discussion.  1.  Annual adjustment of alimony.  The original judgment provided that the wife would receive alimony

3

representing 32.5 percent of the difference in the parties' gross income. It further provided that the wife's alimony would be adjusted annually, starting in 2023 and with no specified end date, based on the husband's earnings for each respective year. In her rationale, the judge justified this annual adjustment of alimony on the ground that "the parties lived a certain lifestyle which they both became accustomed to in anticipation that Husband's income would continue to increase, which it has," and concluded that it would be "inequitable to cap Husband's alimony obligation at a particular income." In his motion to alter or amend the judgment, the husband contended that the judge "failed to provide reasoning why an upward deviation (or a yearly self-modifying alimony award) is proper" and that her findings "offend the ruling" in Young v. Young, 478 Mass. 1 (2017). The judge then issued an amended judgment that omitted the annual adjustment, without any explanation, further findings, or rationale.

In reviewing a judge's decision on alimony, we conduct a two-step inquiry. First, "we examine a judge's findings to determine whether the judge considered all of the relevant factors under G. L. c. 208, § 53 (a), and whether the judge relied on any irrelevant factors." Zaleski v. Zaleski, 469 Mass. 230, 236 (2014). Second, "we decide whether the rationale

4

underlying the judge's conclusions is apparent and whether these flow rationally from the findings and rulings" (quotation and citation omitted). Hassey v. Hassey, 85 Mass. App. Ct. 518, 524 (2014).

In Young, the Supreme Judicial Court remanded a divorce judgment for revaluation of an alimony judgment providing for a percentage-based alimony award due to the "upward trajectory" in the supporting spouse's income. 478 Mass. at 2-3. The court explained that "where the supporting spouse has the ability to pay, 'the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage.'" Id. at 6, quoting Pierce v. Pierce, 455 Mass. 286, 296 (2009). Although variable or contingent alimony awards are permitted, "such cases are the exception rather than the rule, and must be justified by the special circumstances of the case." Id. at 8-9, citing Stanton-Abbott v. Stanton-Abbott, 372 Mass. 814, 817 (1977).

Here, the wife contends that, in the original judgment, the judge appropriately considered the special circumstances of the case and properly exercised her discretion in ordering a percentage-based alimony award. She argues that because the parties lived beyond their means during the marriage in reliance

5

on the husband's anticipated future income, she should be allowed to share in the increases in the husband's post-divorce income. She asserts that annual adjustments in alimony are necessary to allow her to maintain the marital lifestyle and that she does not seek "the standard of living she would have had in the future if the couple had not divorced." Young, 478 Mass. at 3. For his part, the husband argues that a review of the alimony award in conjunction with the asset division and liability allocation shows that an annual adjustment of alimony of indefinite duration was unnecessary to satisfy the wife's marital lifestyle needs. See Andrews v. Andrews, 27 Mass. App. Ct. 759, 761 (1989) ("Alimony and equitable division are interrelated remedies; the combination must make sense").

Because the judge did not explain her reasons for amending the original judgment, we are unable to evaluate the parties' arguments as to whether special circumstances in this case warrant an annual adjustment in the alimony award to the wife. Even though a Probate and Family Court judge has broad discretion in determining the amount of alimony to be paid by one divorcing spouse to another, Zaleski, 469 Mass. at 235, the rationale for the award, including the manner in which the judge applied the relevant factors, must be apparent in the judge's written decision. See, e.g., Bowring v. Reid, 399 Mass. 265,

6

267-268 (1987) ("The rationale for the decision must appear in the judgment either explicitly or by clear implication"); Redding v. Redding, 398 Mass. 102, 108 (1986) (reasons for judge's conclusions must be apparent in findings and rulings). Here, in the original judgment, the judge explained her decision to provide for an annual adjustment in the alimony award, but did not explain her decision to eliminate it. "Because the order for general support alimony as presently constituted does not flow rationally from the judge's findings, it is not in compliance with [G. L. c. 208, § 53 (b)]." Hassey, 85 Mass. App. Ct. at 526, citing Bowring, supra at 267. Accordingly, we vacate and remand to enable the judge to provide the rationale for any amendment to the alimony obligations set forth in the original judgment.

2. Contempt judgments. The wife also challenges the two contempt judgments entered against her. On June 21, 2023, the wife filed a complaint for contempt against the husband, alleging that the husband failed to, among other things, provide written proof of continued life insurance coverage with the wife named as the beneficiary. On August 23, 2023, the husband filed a complaint for contempt against the wife, alleging that she failed to pay (1) a debt owed to her parents and (2) her assigned share of their children's student loans. Both

7

complaints were filed before the judge issued her amended judgment. Following a hearing, the judge found the husband not guilty of contempt, and found the wife guilty of contempt on both grounds.

"We review the judge's ultimate finding of contempt for an abuse of discretion." Martinez v. Lynn Hous. Auth., 94 Mass. App. Ct. 702, 705 (2019). "[A] civil contempt finding [must] be supported by clear and convincing evidence of disobedience of a clear and unequivocal command." Birchall, petitioner, 454 Mass. 837, 853 (2009). "The contempt must be proved by clear and convincing evidence, and the court is to consider 'the totality of the circumstances.'" Smith v. Smith, 93 Mass. App. Ct. 361, 363 (2018), quoting Wooters v. Wooters, 74 Mass. App. Ct. 839, 844 (2009).

The judge found the wife in contempt of paragraph 6 of the original judgment, titled "Liabilities," which stated:

> "The funds currently held in escrow by Husband's counsel, in the amount of $124,400.91, shall be distributed as follows: $8,342.02 shall be released to Attorney Melanie Soloman for payment of Wife's counsel fees pursuant to G.L. 221 sec. 50. The balance of the funds in the amount of $116,058.59 shall be released forthwith to Wife's parents, Paul and Dorothy McLaughlin, as partial satisfaction of the monies owed to them. Wife shall be responsible for the remainder of the debt owed to her parents (emphasis added)."

The judge found the wife in contempt because she "deliberately acted in concert with her parents in an attempt to collect these

8

funds from Husband."  The judge pointed to a Superior Court action filed by the wife's parents which resulted in an order determining that "the funds provided [from] the Wife's parents were a loan, as opposed to a gift, for which the parties were responsible pursuant to a promissory note that they executed in favor of Wife's parents."  The judge found that the wife caused an execution in that action to be served upon the husband seeking payment of the loan, even though the original judgment "clearly provides that payment is solely her responsibility."  The wife contends that these findings are not supported by clear and convincing evidence, and, even if they are, do not amount to "a clear and undoubted disobedience of a clear and unequivocal command."  Halpern v. Rabb, 75 Mass. App. Ct. 331, 334 (2009), quoting Warren Gardens Hous. Coop. v. Clark, 420 Mass. 699, 700 (1995).  While we agree with the judge that it was "incorrect" for the wife to assert that "the issue of the funds due to her parents is barred by res judicata as it has already been litigated in the Superior Court," the original judgment did not clearly and unequivocally prohibit her from advocating this legal theory or even assisting her parents in their attempt to collect from the husband.  Rather, it simply assigned to the wife the responsibility for paying the debt.  It did not set a deadline by which the wife had to pay off this debt, and, by the

9

time of the contempt hearing, the wife had in fact made several payments to her parents. Given these circumstances, it was an abuse of discretion to conclude that she violated a "clear and unequivocal order."

On the other hand, the judge did not abuse her discretion in finding the wife in contempt for failing to pay her share of the children's student loans. At the contempt hearing, the husband claimed that the wife still owed $4,595 for her share of the loans. The wife did not dispute that she had failed to pay her share, but alleged that she instead paid $5,000 directly to the parties' two daughters. Even though the wife argues that the original judgment did not explain where she should send the payments for the loans, her responsibility to make the payments was clear and unequivocal. See Stabile v. Stabile, 55 Mass. App. Ct. 724, 726-727 (2002) ("a party's self-serving characterization of a provision as 'ambiguous' does not make it so"). We agree with the judge that, in light of this clear and unequivocal command, the wife should have sought clarification on methods of payment rather than "ignore her monthly payment responsibility and instead exercise[] self-help." Furthermore, even though the wife suggests that she could not pay her share of the student loans, she did not make this argument with respect to the student loans in the Probate and Family Court and

10

therefore it is waived.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006) ("An issue not raised or argued below may not be argued for the first time on appeal").

Conclusion.  We vacate and remand so much of the amended judgment that eliminated the annual adjustments for further findings and rulings on the issue of alimony.  Pending a further order of the Probate and Family Court or agreement of the parties, the alimony obligations set forth in the original judgment shall remain in full force and effect.  The portion of the November 24, 2023 contempt judgment adjudicating the wife guilty of contempt is reversed.  The portion of the November 28, 2023 contempt judgment against the wife relative to her failure to pay the remainder of the debt owed to her parents, as set

11

forth in paragraph six of the original judgment, is reversed.

In all other respects, the contempt judgments are affirmed.[3]

So ordered.

By the Court (Blake, C.J.,
Hodgens & Toone, JJ.[4]),

*Paul Little*

Clerk

Entered:  May 12, 2025.

---

[3] The husband has requested attorney's fees and costs on appeal pursuant to G. L. c. 211A, § 15, claiming that the wife's appeal is frivolous.  As we do not consider the wife's appeal frivolous, immaterial, or intended for delay, the request is denied.

[4] The panelists are listed in order of seniority.