## ANDREA MAALOUF *vs.* ELIE SALIBA.

No. 00-P-403.

Norfolk. October 4, 2001. - April 23, 2002.

Present: BROWN, CYPHER, & KAFKER, JJ.

*Abuse Prevention. Minor,* Visitation rights. *Divorce and Separation,* Visitation. *Statute,* Construction.

This court remanded a custody matter to the Probate and Family Court for explicit written findings, as required by G. L. c. 208, § 31A, on the issue whether the father had engaged in a pattern or serious incident of abuse of the mother, and, if so, its effect on the children in question; and for consideration of the safety and well-being of the children during unsupervised visitation with the abusive parent. [549-551]

COMPLAINT for divorce filed in the Norfolk Division of the Probate and Family Court Department on November 27, 1996.

The case was heard by *David H. Kopelman,* J.

*Margaret B. Drew* for the plaintiff.

*Deborah Sirotkin Butler* for the defendant.

CYPHER, J. After an eight-day trial, a judge of the Probate and Family Court granted Andrea Maalouf (mother) a divorce on the ground of cruel and abusive treatment, entered a permanent restraining order prohibiting Elie Saliba (father) from contact with the mother, and awarded legal and physical custody of the couple's young triplets to the mother. Finding that there was a risk that the father would unlawfully remove the children from this country, the judge ordered supervised visitation until the father met certain conditions, including that he relinquish control of his passport, communicate certain information to the Lebanese Embassy, and post a bond.

The mother appeals from the portion of the order granting the father unsupervised visitation of their triplets upon meeting the foregoing security requirements. She argues that because, as the

judge found, she has been subjected to abuse at the hands of the father, unsupervised visitation would not adequately provide for the safety and well-being of the children until the father participates in and completes a certified batterer's treatment program. See G. L. c. 208, § 31A. Cf. *Custody of Vaughn*, 422 Mass. 590 (1996). She also argues that the judge failed to make sufficient findings regarding the impact on the children of the father's abusive behavior toward her and that the findings therefore did not support unsupervised visitation under G. L. c. 208, § 31A. We remand for further findings.

1. *Factual background.* The parties were married in June, 1994, and their triplets were born in July, 1996. The mother and father separated on November 10, 1996, after an incident of abuse.

a. *Abuse of the mother.* The judge found the following facts. Beginning in 1994, the father swore at the mother and verbally abused her on a daily basis. Beginning in June, 1995, the father occasionally resorted to physical violence. On June 3, 1995, while he was driving, he grabbed her throat and said, "Shut up or I will throw you out of the car"; on December 6, 1995, again while driving, he put his hands over her mouth, and when she pushed his hands away, he grabbed her by the throat and called her various obscene names; on October 20, 1996, he again grabbed her by the throat and called her various obscene names; and on November 10, 1996, he became angry when he could not locate photographs of his family, screamed and swore at her, kicked her in the buttocks, grabbed her jaw and threatened to knock out her teeth, and grabbed her by the throat and threatened to push her down the stairs. The mother had a strong and genuine fear of the father.[1]

b. *Visitation.* The judge made the following findings: it is in the children's best interests to maintain the close bond they have formed with the father and his family, including his mother and sister; the father and his family provide a safe, appropriate, and loving environment for the children during visitations; the father cares for the triplets in a loving and appropriate manner;

---

[1] The mother introduced testimony from an expert regarding the statistical likelihood that a person who abuses a partner will abuse a child. It is unclear from the judge's findings what weight, if any, he gave the testimony.

and the children respond well to the father and are very affectionate to him. The judge also found that the father needs assistance with the children and ordered that he arrange for assistance from specified family members or an approved family service officer.

2. *Discussion.* General Laws c. 208, § 31A, requires the Probate and Family Court judge to "consider evidence of past or present abuse toward a parent or child as a factor contrary to the best interest of the child" when issuing any temporary or permanent custody order.[2] The statute, which the Legislature passed in July, 1998, and made effective October, 1998, codified the requirements expressed by the Supreme Judicial Court in *Custody of Vaughn,* 422 Mass. at 599-600. A finding, by a preponderance of the evidence, that a pattern or serious incident of abuse has occurred, creates "a rebuttable presumption that it is not in the best interests of the child to be placed in sole custody, shared legal custody or shared physical custody with the abusive parent."[3] G. L. c. 208, § 31A. Upon making a finding that a pattern or serious incident of abuse has occurred, the court is required to make written findings of fact within ninety days as to the effects of the abuse on the child. *Ibid.* Such findings must demonstrate that the temporary or permanent custody order "is in the furtherance of the child's best interests and provides for the safety and well-being of the child." *Ibid.*

The statute further states that if visitation is ordered to the abusive parent, "the court shall provide for the safety and well-being of the child and the safety of the abused parent." *Ibid.*

[2]Identical statutory language may be found in G. L. c. 209, § 38, and G. L. c. 209C, § 10.

[3]The statute defines abuse as "the occurrence of one or more of the following acts between a parent and the other parent or between a parent and child: (a) attempting to cause or causing bodily injury; or (b) placing another in reasonable fear of imminent bodily injury." A "serious incident of abuse" is defined as "(a) attempting to cause or causing serious bodily injury; (b) placing another in reasonable fear of imminent serious bodily injury; or (c) causing another to engage involuntarily in sexual relations by force, threat or duress." Under the statutory scheme, the definition of "bodily injury" has the same meaning as provided in G. L. c. 265, § 13K, which defines bodily injury as "substantial impairment of the physical condition, including, but not limited to, any burn, fracture of any bone, subdural hematoma, injury to any internal organ, or any injury which occurs as the result of repeated harm to any bodily function or organ, including human skin."

The statute then identifies nine possible orders that the court may consider in order to achieve the statute's objective of providing "for the safety and well-being of the child and the safety of the abused parent."[4] *Ibid.* The requirements of the statute apply even in cases where the judge does not award custody to the abusive partner. Quirion, Increased Protection for Children From Violent Homes, 16 Mass. Fam. L.J. 67, 71 & 77 n.51 (1998) (discussing legislative history of statute which demonstrates intent of Legislature that statute apply regardless of who is awarded custody).

The statute had only been recently passed at the time of the trial and was not effective until October 20, 1998. Nevertheless, because the case was pending on that date and the judge's order was not entered until March, 1999, the statute applied and the findings it requires should have been included in the order. *Goes* v. *Feldman,* 8 Mass. App. Ct. 84, 88 (1979) (state of proceedings on effective date of statute determines whether statute applies).

We examine the judge's findings to determine whether the requirements of G. L. c. 208, § 31A, were met.[5] Even though the judge made detailed and comprehensive findings, demonstrating close attention to the record, this is not a case in which we may conclude that the judge made implicit findings sufficient to satisfy the statute. In *Custody of Vaughn,* the Supreme Judicial Court emphasized that "[d]omestic violence is an issue too fundamental and frequently recurring to be dealt with only by implication." 422 Mass. at 599.

---

[4]The nine possible orders set forth in the statute are "(a) ordering an exchange of the child to occur in a protected setting or in the presence of an appropriate third party; (b) ordering visitation supervised by an appropriate third party, visitation center or agency; (c) ordering the abusive parent to attend and complete, to the satisfaction of the court, a certified batterer's treatment program as a condition of visitation; (d) ordering the abusive parent to abstain from possession or consumption of alcohol or controlled substances during the visitation and for 24 hours preceding visitation; (e) ordering the abusive parent to pay the costs of supervised visitation; (f) prohibiting overnight visitation; (g) requiring a bond from the abusive parent for the return and safety of the child; (h) ordering an investigation or appointment of a guardian ad litem or attorney for the child; and (i) imposing any other condition that is deemed necessary to provide for the safety and well-being of the child and the safety of the abused parent."

[5]It does not appear that either party notified the judge of this requirement.

As noted above, the judge found that the father resorted to physical violence on four occasions and concluded that the mother had suffered abuse at the hands of the father. It is unclear whether the judge would have determined that this was a pattern of abuse or a serious incident of abuse within the meaning of the statute. Even were we to assume that the incidents of abuse found by the judge constituted a pattern of abuse, and we do not, there is no finding regarding the effect of the abuse of the mother on the children.

Although it appears from his findings and orders that he considered the safety and well-being of the children in making the custody determination and taking precautions to prevent their removal from this country, it is unclear whether he considered the safety and well-being of the children in granting unsupervised visitation, as required by G. L. c. 208, § 31A.[6] There is no evidence that the father abused the children. Furthermore, the judge found that the father had a loving and appropriate relationship with the children. Nevertheless, in the absence of the necessary findings, the requirements of *Custody of Vaughn* and G. L. c. 208, § 31A, have not been satisfied.[7]

Accordingly, we vacate that portion of the judgment that permits unsupervised visitation by the father after the father meets certain conditions. The case is remanded to the Probate and Family Court for explicit findings as required by G. L. c. 208, § 31A. We do not require the judge to hear further testimony if he does not consider that necessary, but the parties should be provided the opportunity to be heard and the judge should make explicit findings on the matters set out above, as identified by G. L. c. 208, § 31A. *Custody of Vaughn*, 422 Mass. at 600. *R.H.* v. *B.F.*, 39 Mass. App. Ct. 29, 41 (1995).

*So ordered.*

---

[6]The judge provided for the safety of the mother by ordering the exchange of children to occur in the presence of an appropriate third party, an option contemplated by the statute.

[7]For examples of possible findings regarding the effect of the abuse of a parent on a child, see Quirion, *supra* at 73.