Carrie Lee (mother) and David Mays (father) were divorced in January of 2014, pursuant to a divorce judgment granting sole legal and physical custody of the parties' six children to the mother and "ample" parenting time to the father. On December 30, 2015, a judge of the Probate and Family Court issued a modification judgment, which, in pertinent part, transferred sole legal and physical custody to the father and ordered supervised visitation for the mother. The mother appeals.[2] Because we conclude that the judge failed to make findings as required by G. L. c. 208, § 31A, we vacate the modification judgment in part and remand for further proceedings consistent with this memorandum and order.
Discussion. We review custody determinations for an abuse of discretion.[3] Schechter v. Schechter, 88 Mass. App. Ct. 239, 245 (2015). "[A] transfer of custody from one parent to another must be based on some material and substantial change in circumstances since the divorce, ... and ... the change must be of sufficient magnitude to satisfy the governing principle, namely, whether the transfer is in the best interests of the child." Hernandez v. Branciforte, 55 Mass. App. Ct. 212, 220 (2002). See G. L. c. 208, § 28. "In custody matters, the touchstone inquiry [is] ... what is 'best for the child,' " and "[t]he determination of which parent will promote a child's best interests rests within the discretion of the judge ... [whose] findings ... 'must stand unless they are plainly wrong.' " Hunter v. Rose, 463 Mass. 488, 494 (2012), quoting Custody of Kali, 439 Mass. 834, 840, 845 (2003). While there is no "definitive list of criteria" for the judge to consider when assessing the children's best interests, "certain constants are revealed in our cases," including "the need for stability, ... the decision-making capabilities of each parent to address the child's needs, and the living arrangements and lifestyles of each parent and how such circumstances may affect the child" (quotation omitted). El Chaar v. Chehab, 78 Mass. App. Ct. 501, 506 (2010). See G. L. c. 208, § 31. "The judge is afforded considerable freedom to identify pertinent factors in assessing the welfare of the child and weigh them as she sees fit." Smith v. McDonald, 458 Mass. 540, 547 (2010).
The judge in the present case made extensive findings in support of her decision to transfer sole custody to the father, the key portions of which we summarize here. Since the time of the divorce trial in April of 2013, the mother had "purposely withheld the children from parenting time with [the] [f]ather," by "fabricating claims about health issues for the children and seeking unnecessary medical treatment" for the children after their visits with the father.[4] Consequently, the father "had parenting time with all six children on only five occasions" between April of 2013 and March of 2014. During that same twelve-month period, the mother "enlist[ed] the children to report fictitious or exaggerated accounts of abuse by [the] [f]ather to mandated reporters," which resulted in the filing of fourteen 51A reports (see G. L. c. 119, § 51A,) with the Department of Children and Families (DCF).[5] The DCF investigators assigned to the case concluded that the child abuse and neglect allegations against the father were not supported, which the judge credited. The case was referred to DCF's clinical review team,[6] which ultimately added "a new allegation" of neglect against the mother "due to concerns" that her campaign against the father "was negatively impacting [the] children's emotional well-being," and recommended that DCF remove the children from the mother's home and intervene in support of the father's request for sole custody. The children were transferred to the father's temporary sole custody in March of 2014, and the judge found that they had "adjusted very well" and were "thriving" in the father's care.[7] Crediting the testimony of several witnesses (including the father and several DCF employees assigned to the case), the judge concluded that the father was a capable caretaker with an appropriate home environment, and that he was "willing to foster a positive relationship between the children and [the] [m]other."[8] See Hunter, 463 Mass. at 496, 503 (affirming the award of sole custody to the only parent willing to foster the child's relationship with the other parent). In contrast, the judge found that the mother made "extreme" parenting decisions[9] and demonstrated a "clear inability" to place the children's "emotional well-being" above her own needs.[10] See Zatsky v. Zatsky, 36 Mass. App. Ct. 7, 13 (1994) (affirming award of sole custody to parent "able to subordinate her emotional needs to those of the children"). The judge concluded that the mother's "crusade" to minimize the father's role in the children's lives was "contrary to the children's best interests," and "returning them to [the] [m]other would be detrimental to their well-being." See G. L. c. 208, § 31 (the judge "shall consider whether or not the child's present or past living conditions adversely affect his physical, mental, moral or emotional health"); Hunter, 463 Mass. at 494 (among the "[f]actors a judge may weigh" in determining the child's best interests is "whether one parent seeks to undermine the relationship a child has with the other parent").
The mother challenges the judge's "central" findings, claiming they are not supported by the evidence at trial. We disagree. There is ample support for the judge's findings throughout the voluminous record.[11] Moreover, many of the judge's findings were based on her assessment of the credibility of the witnesses who testified at the trial -- including both parties and four DCF employees involved in the case. As there is nothing in the record convincing us that the judge's credibility determinations were "plainly wrong," we decline to disturb them. Zaleski v. Zaleski, 469 Mass. 230, 237 (2014), quoting Felton v. Felton, 383 Mass. 232, 239 (1981). Indeed, "[i]n this situation, '[t]he opportunity which the judge had to observe and appraise both parents is particularly important.' " Bak v. Bak, 24 Mass. App. Ct. 608, 616 (1987), quoting Stevens v. Stevens, 337 Mass. 625, 627 (1958).
The mother further argues that the judge committed reversible error by failing to make findings regarding the father's history of domestic violence. General Laws c. 208, § 31A, which codified the principles set forth in Custody of Vaughn, 422 Mass. 590 (1996), "requires the Probate and Family Court judge to 'consider evidence of past or present abuse toward a parent or child as a factor contrary to the best interest of the child' when issuing any temporary or permanent custody order." If the judge finds "that a pattern or serious incident of abuse has occurred," the judge must "make written findings of fact within ninety days [regarding] the effects of the abuse on the child" and "demonstrat[ing] that the temporary or permanent custody order 'is in the furtherance of the child's best interests and provides for the safety and well-being of the child.' " Maalouf v. Saliba, 54 Mass. App. Ct. 547, 549 (2002), quoting G. L. c. 208, § 31A. Accordingly, "[w]e examine the judge's findings to determine whether the requirements of G. L. c. 208, § 31A, were met." Id. at 550.
Here, as in Maalouf, "[e]ven though the judge made detailed and comprehensive findings, demonstrating close attention to the record, this is not a case in which we may conclude that the judge made implicit findings sufficient to satisfy the statute." Maalouf, 54 Mass. App. Ct. at 550. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 551 (remanding due to judge's failure to make express findings under § 31A as to whether the father's abuse of the mother constituted a "pattern ... or a serious incident," and the effect of the abuse on the children). The father and children argue that the absence of findings regarding domestic violence was not error, as the mother failed to present evidence sufficient to trigger the requirements of G. L. c. 208, § 31A. We disagree.[12] The record reveals several allegations of domestic violence made by the mother against the father. The judge was certainly within her discretion to conclude that the allegations were not credible, particularly where the most serious of the allegations appeared in the various 51A reports generated in connection with the mother's "crusade" against the father. We cannot, however, ascertain whether the judge assessed the credibility of the allegations, as her findings contain no mention of them. Moreover, the father's own testimony established that he pleaded guilty to domestic assault after "push[ing]" the mother during an argument in 2001,[13] and the mother obtained a permanent G. L. c. 209A restraining order against him in 2012, which he unsuccessfully sought to have dismissed.
Although this is a close case, we think "the record raises sufficient concerns regarding domestic violence to require Vaughn findings." Care & Protection of Lillith, 61 Mass. App. Ct. 132, 139 (2004). See id. at 137, 142 (remanding for § 31A findings where the judge's "findings and conclusions on domestic violence [were] ambiguous, essentially just summarizing conflicting testimony"). "[D]omestic violence is an issue too fundamental and frequently recurring to be dealt with only by implication." Maalouf, 54 Mass. App. Ct. at 550, quoting Vaughn, 422 Mass. at 599. Because a judge's obligation to consider evidence of "past" abuse is mandatory under § 31A, and the judge's findings here do not reflect such consideration, we have no choice but to remand "for explicit findings as required by G. L. c. 208, § 31A." Maalouf, supra at 551. We emphasize that, but for this omission, we would affirm the judge's otherwise well-supported custody decision. See Schechter, 88 Mass. App. Ct. at 248 ("our duty as a reviewing court is to ensure that the record reflects that all relevant factors have been considered by the judge, and that the decision is based on a fair weighing of the factors").
Conclusion.[14] The paragraphs numbered one through seven of the modification judgment dated December 30, 2015, are vacated, and the matter is remanded for further proceedings consistent with this memorandum and order. In all other respects, the modification judgment is affirmed. We do not "require the judge to hear further testimony if [she] does not consider this necessary, but at the least [she] must hear both parties and make explicit findings" as required by G. L. c. 208, § 31A (quotation omitted). Lillith, 61 Mass. App. Ct. at 142. Temporary sole legal and physical custody of the children shall remain with the father during the pendency of the remand, and the mother shall remain obligated to pay any temporary child support the judge deems appropriate.
So ordered.
Affirmed in part; vacated in part and remanded

The mother makes no argument as to so much of the modification judgment as concerns an earlier contempt proceeding.

"[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision ... such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008).

For instance, in February of 2014 alone, the mother brought the children to the emergency room on at least four separate occasions after the father's parenting time. The mother claimed that one such visit involved seeking treatment for a child who had broken her arm during the father's parenting time; however, the judge did not find this credible, as the hospital X-ray exam provided "no evidence of fracture or dislocation" and the records from the child's follow-up visit with an orthopedist indicated that there was "no fracture" but the child could continue to wear a cast on her arm "for comfort" until she could be "wean[ed] out of [it]." On February 18, 2014, after the mother and the children met with a social worker at the hospital, the social worker "contacted DCF [Department of Children and Families] to notify them that the hospital would be convening its Child Protection Team based upon the hospital's concern that [the] [m]other was 'seeking medical attention for the children as [a] source of validating her allegations about [the] [f]ather.' "

As found by the judge, the 51A reports contained "six basic allegations": the father allegedly (1) stuck his tongue in one of the children's ears; (2) intentionally exposed one of the children to pornography; (3) struck one of the children on the head; (4) locked two of the children in the trunk of his car and drove over potholes for two hours; (5) kept animals in his home, despite knowing of the children's allergies to pet dander; and (6) fed the children stale food and forced them to sleep on a mattress on the floor during his parenting time. The judge found the allegations to be either false or grossly exaggerated, crediting the testimony of the father and the DCF employees involved in the case. The judge found the mother "fabricated th[e] story" of the children being locked in the trunk of the father's car "in order to generate a 51A report," noting that the father's car, a Sport Utility Vehicle, did not have a trunk. The judge also credited the testimony of the DCF investigators that during their visits to the father's home, they observed no evidence of pets and the refrigerator was well-stocked with nutritious food.

Janica Midiri, the DCF supervisor who referred the matter to the clinical review team for a case management recommendation, testified that she has only referred three cases to the clinical review team in the entire course of her career.

The judge found that, since being in the father's care, the children are "all involved in a variety of age appropriate activities," their various health issues are "under control," their school attendance has substantially improved, and they are all doing well academically (two children are honor roll students, and several others have made significant academic progress).

The judge also found that the father had allowed the children to visit with some members of the mother's family, as he believed those relationships were "important" for the children to maintain.

By way of example, the mother kept one child out of school for thirty-three days due to a broken leg, and "on the days that she did permit [the child] to attend school, she would accompany [the child] to carry her up and down stairs, as her school did not have an elevator."

The judge found that the mother had not seen the children since July of 2014, having "abruptly" cancelled all future visits due to a conflict with the visitation center over her continued violation of their policies. The judge further found that the mother "failed to comply with all of the tasks" required by her DCF service plan, including undergoing a psychological evaluation.

During the six-day modification trial, the judge heard testimony from ten different witnesses and admitted over 7,200 pages of exhibits in evidence.

We are likewise unpersuaded by the children's contention that the mother's domestic violence allegations were irrelevant to the modification proceedings insofar as they predated the divorce judgment and therefore could not be used to establish a material change in circumstances. The burden of establishing a material change in circumstances fell to the father, as the party seeking modification, not the mother. See Greenberg v. Greenberg, 68 Mass. App. Ct. 344, 350 (2007). Moreover, G. L. c. 208, § 31A, expressly requires the judge to consider evidence of "past" abuse; there is no language indicating that the Legislature intended to confine this inquiry to evidence of abuse occurring after the last judgment. See Chin v. Merriot, 470 Mass. 527, 532 (2015) ("we look first to the plain language of the provision at issue to ascertain the intent of the Legislature").

It appears that the parties' eldest child was a few months old at the time.

With respect to the mother's other arguments not addressed herein, they "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).