DAVAE vs. DAVAE, 100 Mass. App. Ct. 54

 
 SHASHI K. DAVAE vs. KETAN C. DAVAE.

100 Mass. App. Ct. 54
 April 14, 2021 - July 21, 2021

Court Below: Probate and Family Court, Bristol Division
Present: Milkey, Hand, & Grant, JJ.

 

Divorce and Separation, Alimony, Child support. Evidence, Earning capacity, Expert opinion. Witness, Expert. Parent and Child, Child support.

This court vacated, in part, the judgment in a divorce action and remanded the matter to the Probate and Family Court for a redetermination of child support and alimony, where, although the judge acted within his discretion in rejecting the opinions of both parties' experts and determining the husband's earning capacity as a self-employed teleradiologist by averaging the husband's past annual earnings for a certain period of years and excluding as outliers the highest- and lowest-earning years, the judge erred in relying on the husband's earnings during certain years in which the judge found that the husband had not been using reasonable efforts to earn to his capacity. [57-60]

In a divorce action, the probate judge neither erred nor abused his discretion in allocating one-third of the husband's tax liabilities to the wife, where the judge properly found that the wife as well as the husband prioritized the children's private school education over the payment of taxes and that the wife bore at least equal responsibility for creating the unsustainable lifestyle that resulted in the parties' economic shortfalls (which were not limited to an inability to pay the children's tuitions), and where the wife directly and indirectly benefited from the husband's earnings during the period of time in which the husband incurred the total tax liability at issue. [60-62]

In a divorce action, the probate judge did not abuse his discretion in referring to a standard under the Massachusetts Child Support Guidelines recognizing a judge's discretion to order a parent to contribute to a child's postsecondary educational expenses but limiting the judge to ordering the parent to pay no more than fifty percent of undergraduate, in-State resident costs of the University of Massachusetts at Amherst unless the judge enters written findings that the parent has the ability to pay a higher amount; nor did the judge abuse his discretion in using the standard as a framework in the assessment of the parties' appropriate tuition obligations. [62-63]

COMPLAINT for divorce filed in the Bristol Division of the Probate and Family Court Department on December 26, 2013.

 The case was heard by Richard J. McMahon, J., and a motion to amend the judgment was considered by him.

Richard J. Dyer for the wife.

 Page 55 

Michael S. Rabieh for the husband.

 HAND, J. The parties' primary dispute at their divorce trial was how to calculate the husband's earning capacity as a radiologist. Aided by an expert witness, the wife argued that at the time of trial, the husband could earn far more income practicing in a traditional hospital- or clinic-based setting than he had done during the last several years of their twenty-year marriage, when he was self-employed and working remotely from home. The judge rejected the opinion of the wife's expert and instead calculated the husband's earning capacity himself, taking into account the practice model the husband had developed and maintained during the marriage. We discern no error in the approach taken by the judge, although certain errors in the judge's specific calculations warrant a limited remand. We otherwise affirm the judgment. [Note 1]

 Background. The parties were married in 1993 and have two children together; at the time of trial, the parties' older child was a twenty year old college junior and their younger child, who was fourteen, was in the ninth grade at a public school. The children lived with the wife in a rented apartment, and the husband continued to reside in the marital home.

 The husband, who was fifty-one years old and in "relatively" good health, was a licensed physician, board-certified in the field of diagnostic radiology. From 2001 to 2006, following the completion of his residency training, the husband worked in clinical positions at healthcare centers and clinics in several States. In 2004, while living in Wisconsin and practicing at a medical center, the husband started his teleradiology business, Darkside Imaging, PC, (Darkside) which he operated from his home. Teleradiology involves the remote review and interpretation of radiologic images. Remote reading of images involves the same basic procedure whether performed in a traditional setting or remotely: an image is taken, it is forwarded by computer to the radiologist, and the radiologist interprets and submits a report back to the requesting person or entity. [Note 2] From 2004 to 2006, the husband worked part time at Darkside while also working full time for a traditional employer; [Note 3] in 2007, the husband left his clinical job and began working full

 Page 56 

 time at Darkside as a teleradiologist. The judge found that the husband was "highly qualified to read, interpret, and report on radiological images, including but not limited to x-rays, ultrasound images, CT scans, and PET scans," and, "based on his skill, training, and experience, [was] highly employable as a tele-radiologist."

 The judge found that when the husband first formed Darkside, he contracted with and received reimbursements from three contractors, earning approximately $350,000 per year. From 2007 forward, however, the husband's income significantly decreased; at the time of trial, the husband's reported income was $3,147.52 per week (approximately $163,000 per year). Having made findings as to the husband's annual earnings for the years 2007, and 2009 through 2016, [Note 4] the judge found that "since at least 2012," the "[h]usband ha[d] not been earning a salary commensurate with his earning capacity."

 Although each party presented expert testimony about the husband's earning capacity, the judge rejected both experts' opinions. The judge rejected the opinion of the husband's expert on the grounds that it relied on the average salaries for all physicians and surgeons in Massachusetts and rejected the wife's expert's opinion on the grounds that it failed to take into account the husband's lack of recent hospital-based practice. Having done so, the judge determined that, because the husband's "earnings [were] so directly connected and intertwined with his individual performance, and because he [was] self-employed, . . . the best indicator of [the husband's] earning potential [was his] own earnings in prior years, rather than the average salaries of other, similarly situated

 Page 57 

 professionals." The judge found the husband's earning capacity to be $210,606, which he arrived at by averaging the husband's annual earnings for the period 2007 through 2016, excluding as outliers the highest- and lowest-earning years (2007 and 2014), and excluding 2008 for the reason we have noted, supra, at note 4.

 Discussion. The wife's primary challenge on appeal is to the judge's determination of the husband's earning capacity; she also claims error in the judge's allocation to her of one-third of the husband's tax liability and in the judge's reference to the "UMASS Standard," see part 3, infra, in imposing on each party a portion of their eldest child's college tuition obligations. We address these points in turn. [Note 5]

 1. Husband's earning capacity. A judge may, under both the Alimony Reform Act (act), G. L. c. 208, §§ 48-55, and the Massachusetts Child Support Guidelines (Guidelines), attribute income to a party who is both underemployed and capable of earning more with "reasonable effort." Macri v. Macri, 96 Mass. App. Ct. 362, 364 (2019), quoting Emery v. Sturtevant, 91 Mass. App. Ct. 502, 509 & n.10 (2017). See Guidelines § I.E.2 (2017). [Note 6] We review the judge's decision to consider attributed income, rather than actual income, for an abuse of discretion. See Schuler v. Schuler, 382 Mass. 366, 374 (1981). Where attribution is appropriate, "the [judge] should consider potential earning capacity rather than actual earnings in making its child support order." 

 Page 58 

 Guidelines § I.E.1-2 (2017). In doing so, the judge must consider a nonexclusive list of factors, "to the extent known and presented to the [judge]," focused on the particular circumstances of the parent at issue. See Guidelines § I.E.3 (2017). [Note 7] We review the judge's factual determinations only for clear error. See Canning v. Juskalian, 33 Mass. App. Ct. 202, 210-211 (1992).

 We begin by considering the wife's challenge to the judge's rejection of the opinion of her expert witness, Dr. Peter Cohen. Dr. Cohen's opinion of the husband's earning capacity was based on his determination of the average earnings of "radiologists of similar qualifications, education, and experience in the area." In rejecting that opinion, the judge found that "Dr. Cohen's estimates did not account for the fact that [the] [h]usband ha[d] not worked in a hospital setting in nearly fifteen . . . years, and thus likely would not be able to readily obtain a job paying a commensurate salary to other professionals with different, hospital-centric work histories." We discern no error.

 First, and contrary to the wife's argument, there was evidence at trial, through the husband's expert witness, Dr. Christopher Wood, that a ten-year absence from hospital practice would be a disadvantage to a radiologist seeking employment in a hospital setting. Second, even had that not been the case, we read the judge's findings as permissibly rejecting Dr. Cohen's opinion because Dr. Cohen did not base his estimate on the average earnings of a radiologist with a practice comparable to that of the husband. As the husband transitioned from traditional radiology to teleradiology years before the parties separated, his career change cannot reasonably be viewed as an attempt to manipulate his income to reduce or avoid his support obligations. Because the question presented to the judge was whether the husband could, with reasonable effort, earn more as a teleradiologist, the judge was within his discretion in concluding that the husband's earning capacity 

 Page 59 

was appropriately determined within the framework of the husband's existing practice model, rather than the model on which Dr. Cohen's opinion was grounded. [Note 8] See Macri, 96 Mass. App. Ct. at 367 (in considering income attribution, "we do not suggest here that a party is foreclosed from making a good faith, voluntary career change").

 We next turn to the judge's calculation of the income attributable to the husband. Having rejected the opinions of both parties' experts, the judge permissibly considered other available evidence, namely, the husband's earning history. See Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 863 (1989) (faced with conflicting expert opinion on value, "the judge may reject expert opinion altogether and arrive at a valuation on other evidence"). To the extent that the judge relied on earnings that he found represented the husband's "reasonable efforts" to earn to capacity, we discern no error in the judge's use of an average of the husband's past earnings as a basis for determining the husband's present earning capacity. See Whelan v. Whelan, 74 Mass. App. Ct. 616, 623 (2009), quoting LaValley v. LaValley, 25 Mass. App. Ct. 918, 920 (1987) (averaging method appropriate where payor's income "might 'fluctuate widely'" and average "was 'a reasonable indicator of [the husband's] long-term average income'").

 We likewise conclude that the judge acted within his discretion in discounting the highest and lowest earning years from the calculation, based on his determination that they were not representative of what the husband could earn, with reasonable efforts, as a teleradiologist. [Note 9]

 The wife's challenge to the judge's reliance on the husband's earnings from 2012 through 2016, however, fares better. The judge's explicit finding "that [the] [h]usband ha[d] not been earning a salary commensurate with his earning capacity since at least 2012" incorporated an implicit finding that the husband had not been using reasonable efforts to earn to capacity as a teleradiologist for 2012 through 2016 (the last year for which the 

 Page 60 

judge heard evidence). [Note 10] Despite this finding, however, the judge included earnings from several years within that time frame in calculating the husband's average earning capacity. We do not discern a proper basis on which the judge could have determined an average earning capacity -- which assumes the husband's reasonable efforts -- based at least in part on earnings figures which the judge determined did not represent reasonable efforts. See Emery, 91 Mass. App. Ct. at 509 (relating "earning capacity" to "reasonable effort"). Accordingly, we conclude that to the extent that the judge relied upon the husband's earnings for 2012, 2013, 2015, and 2016, in determining the husband's earning capacity, the judge erred.

 2. Allocation of husband's tax liability. The wife argues that the judge erred in allocating one-third of the husband's tax liabilities to her. The judge found that in 2012, the parties were living beyond their means, including sending their children to private schools that the parties could not afford. The judge found that the parties mutually agreed not to pay taxes on at least the husband's income beginning in 2012, in favor of paying the children's school tuitions, and for that reason divided the husband's resulting tax liabilities between the parties.

 "In reviewing a property division under G. L. c. 208, § 34, . . . an appellate court conducts a two-step analysis" (footnote omitted). Hassey v. Hassey, 85 Mass. App. Ct. 518, 523-524 (2014), citing Adams v. Adams, 459 Mass. 361, 371 (2011). "First, we examine the trial judge's findings to determine whether all relevant factors were considered (and whether irrelevant factors were disregarded). . . . Next, we decide whether the rationale underlying the judge's conclusions is apparent and whether these 'flow rationally from the findings and rulings.'" [Note 11] Hassey, supra at 524, quoting Williams v. Massa, 431 Mass. 619, 631 (2000).

 Page 61 

 Section 34 "allows a judge to 'assign to either husband or wife all or any part of the estate of the other.'" Hassey, supra at 531, quoting G. L. c. 208, § 34. "[B]ecause the judge has considerable discretion, determinations as to alimony and property division will not be reversed unless plainly wrong and excessive." Hassey, supra at 524, citing Redding v. Redding, 398 Mass. 102, 107 (1986).

 The judge did not abuse his discretion here. The judge's findings address each of the mandatory considerations under § 34 and do not reflect his reliance on any irrelevant considerations. We discern no error in the judge's finding that the wife as well as the husband prioritized the children's private school education over the payment of taxes, nor in his determination that the wife bore at least equal responsibility for creating the unsustainable lifestyle that resulted in the parties' economic shortfalls, which were not limited to an inability to pay the children's tuitions. [Note 12] We note that the judge considered the fact that, after the parties deferred the payment of taxes to pay the children's tuition, the parties (with a judge's permission) subsequently used marital assets to pay the remaining tuition bills.

 Further, the total tax liability at issue was incurred between 2012 and 2016, with the majority incurred between 2012 and 2014. Thus, a significant portion of the husband's tax liability was incurred while the parties were still living together. Moreover, after the parties separated in March 2014, the husband paid the mortgage on the marital home (the equity of which the judge divided equally between the parties) and the husband paid temporary child support to the wife (which is nontaxable to her, and nondeductible by the husband, Guidelines § II.A.2 [2017] [Guidelines "developed with the understanding that child support is non-deductible by the payor and non-taxable to the recipient"]; see L.J.S. v. J.E.S., 464 Mass. 346, 348 n.1 [2013] [under Federal statutory scheme, child support payments "not deductible from the payor's income"]). Accordingly, the wife directly and indirectly benefited from the husband's 2012-2016 earnings (directly while living with him, and indirectly through her receipt of child 

 Page 62 

support and fifty percent of the appreciation of the marital home equity attributable to the husband's mortgage payments after March 2014). It is therefore not unreasonable to make the wife responsible for a portion of the tax liability on the earnings from which she benefited, regardless of whether she consented to deferring the husband's tax payments on those earnings. Mindful that "[t]he 'ultimate goal of G. L. c. 208, § 34,' is 'an equitable, rather than an equal'" distribution of the marital estate, Connor v. Benedict, 481 Mass. 567, 580 (2019), quoting Adlakha v. Adlakha, 65 Mass. App. Ct. 860, 864 (2006), we discern neither clear error nor abuse of discretion in the judge's allocation of the husband's tax liability.

 3. Use of "UMASS standard." At the time of trial, the parties' eldest child was a junior at a private college. Citing to the Guidelines, § II.G.3, which recognize the judge's discretion to order a parent to contribute to a child's post-secondary educational expenses, but limit the judge to ordering a parent to pay no more than "fifty percent of the undergraduate, in-state resident costs of the University of Massachusetts-Amherst, unless the [judge] enters written findings that a parent has the ability to pay a higher amount" (UMASS standard), the judge ordered the parties to contribute equally to the child's college tuition expenses, capping each party's contribution at $15,407 per year. [Note 13] The wife argues that, in light of the commentary to this section stating "[t]he [Child Support Guidelines] Task Force does not intend the limitation to apply to children already enrolled in post-secondary education before the effective date of these guidelines or to parents who are financially able to pay educational expenses using assets or other resources," the judge erred in applying the UMASS standard in this case.

 We disagree. The judge had broad discretion in allocating responsibility for the eldest child's tuition. While, strictly speaking, § II.G did not apply here, because the eldest child already was enrolled in college at the time the Guidelines became effective in 2017, see Feinstein v. Feinstein, 95 Mass. App. Ct. 230, 235 (2019), we discern no abuse of discretion in the judge's reference to the UMASS standard, or to its use as a framework in the 

 Page 63 

assessment of the parties' appropriate tuition obligations. [Note 14]

 Disposition. Paragraphs 3 and 6 of the judgment of divorce are vacated and the case is remanded for a redetermination of child support and alimony after recalculating the husband's attributed income consistent with this decision. In doing so, the judge may, in the exercise of the judge's discretion, take and consider additional evidence. In all other respects the divorce judgment is affirmed. During the pendency of the remand, the husband shall pay temporary child support to the wife of $664 per week until the entry of judgment, unless otherwise ordered by the judge. [Note 15] The order dated January 31, 2018, on the wife's motion to amend the judgment is affirmed. The wife's request for attorney's fees is denied.

So ordered.

FOOTNOTES
[Note 1] The wife also appealed from the January 31, 2018, order on her motion to amend the divorce judgment, but she makes no separate argument in her brief with respect to that order. In any event, the issues raised in the wife's motion to amend are addressed in our disposition of the divorce judgment. 

[Note 2] The judge did not make a finding about the scope of a teleradiologist's duties as compared to those of a radiologist practicing in a traditional setting; the husband's testimony was that traditional radiology required additional work -- at a minimum, meeting individual patients and "procuring the images" to be read, and potentially including additional "modalities," like breast imaging and procedures in which the patient undergoes conscious sedation -- not required of a teleradiologist. 

[Note 3] In 2005 and 2006, the husband worked at least seventy-five hours per week and usually slept less than four hours per night. 

[Note 4] The husband's earnings for each year were: 2007 ($637,398), 2009 ($225,238), 2010 ($259,384), 2011 ($315,380), 2012 ($235,202), 2013 ($111,000), 2014 ($95,463), 2015 ($141,880), and 2016 ($186,158). The wife has not challenged the basis of the calculations for any of these years. 

 The judge made no finding about the husband's 2008 earnings, on the grounds that "neither party provided the [judge] with any information relative to [that] year." Because we are not persuaded that, as the wife argues, the husband's testimony provided evidence of the husband's 2008 earnings, we disagree with the wife's claim that the judge erred in excluding that year's earnings in his average.

[Note 5] In the judgment of divorce nisi, the judge awarded child support, but not alimony, to the wife. To the extent that the wife challenges the judge's decision not to order alimony, we understand her disagreement to be limited to the judge's assessment of the husband's earning capacity, and thus his ability to pay alimony. Because the wife made no other sustained argument challenging the judge's alimony determination, either in her motion to amend the judgment or in her appellate brief, we consider any other grounds to challenge the alimony order to be waived. See Zora v. State Ethics Comm'n, 415 Mass. 640, 642 n.3 (1993) ("bald assertions of error, lacking legal argument and authority," do not rise to level of appellate argument); Donovan v. Gardner, 50 Mass. App. Ct. 595, 602 (2000) (conclusory statements in brief do not rise to level of appellate argument). Cf. G. L. c. 208, § 34 (alimony awards within judge's discretion, after consideration of enumerated factors); Zaleski v. Zaleski, 469 Mass. 230, 235 (2014) ("A judge has broad discretion when awarding alimony under [G. L. c. 208, § 34]"). 

[Note 6] The 2017 Guidelines went into effect on September 15, 2017, after the conclusion of the trial, but before the entry of the judgment of divorce nisi. See Guidelines 1 (2017). Although subsequently amended, the 2017 Guidelines were applied to the judgment in the instant case. 

[Note 7] Specifically, § I.E.3 of the Guidelines mandate that: 

"The [judge] shall consider the age, number, needs and care of the children covered by the child support order. The [judge] shall also consider the specific circumstances of the parent, to the extent known and presented to the [judge], including, but not limited to, the assets, residence, education, training, job skills, literacy, criminal record and other employment barriers, age, health, past employment and earnings history, as well as the parent's record of seeking work, and the availability of employment at the attributed income level, the availability of employers willing to hire the parent, and the relevant prevailing earnings level in the local community."

[Note 8] In light of our conclusion, we do not address the wife's challenge to the reasonableness of the husband's efforts to obtain employment in a hospital or a private practice setting. 

[Note 9] We reject the wife's argument that the judge failed to consider the "distorting effect" of the minimum hours requirement in the husband's contract with one of Darkside's contractors. There was no evidence that the husband worked only the minimum number of hours provided in that contract, and ample evidence to the contrary, notwithstanding the judge's determination that the husband failed to explain adequately some of his lower-range earnings. 

[Note 10] The judge noted that given the nature of teleradiology work and the husband's skill in the field, the husband could "manipulate his income depending directly on how much time he devote[d] to work and how efficiently he [was] able to perform his work," and determined that the husband failed to provide an explanation for the fact that his annual income had decreased since 2012. 

[Note 11] "The mandatory factors for property division are now 'the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunity of each for future acquisition of capital assets and income, and the amount and duration of alimony, if any, awarded under [G. L. c. 208, §§ 48-55]. In fixing the nature and value of the property to be so assigned, the [judge] shall also consider the present and future needs of the dependent children of the marriage.' . . . The discretionary factors are 'the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit.'" Hassey, 85 Mass. App. Ct. at 522 n.10, quoting G. L. c. 208, § 34. 

[Note 12] The judge found, for example, that the parties had substantial personal debts and that they had been forced to sell one of their homes by way of a short sale. 

[Note 13] We are cognizant of the fact that the judgment may leave payment for a portion of the tuition unallocated. 

[Note 14] Given this conclusion, we need not address the wife's argument concerning the effect of errors -- later corrected by the judge -- in the judge's original finding of the cost of the elder child's college tuition. 

[Note 15] The amounts paid during the remand period may be considered by the judge in entering a judgment after remand. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.