NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-939

S.N.B.

vs.

P.K.M.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

S.N.B. (wife), the former spouse of P.K.M. (husband), appeals from a judgment of divorce nisi (divorce judgment) issued by a judge of the Probate and Family Court, challenging the property division, the amount of income attributed to the husband for purposes of child support, and certain provisions relating to custody and parenting time for the parties' two minor children. We vacate the portions of the divorce judgment pertaining to child support and the father's parenting time, and remand those matters for further proceedings consistent with this memorandum and order. The divorce judgment is otherwise affirmed.

Background.  We summarize the trial judge's relevant findings, supplementing them with undisputed facts in the record, and reserving other facts for later discussion.  See Pierce v. Pierce, 455 Mass. 286, 288 (2009).

The parties' marriage was arranged by their families.  When they met in late 2004, the husband was living in New Jersey and the wife was living in Iowa.  They were married in India in May 2005, and returned to Iowa after the wedding.  In 2006, after the wife obtained her master's degree, the parties moved to Massachusetts, and the wife obtained her doctorate degree in 2011.  The parties' eldest son was born in 2012, and their youngest son was born in 2015.

The husband was emotionally and physically abusive toward the wife and children during the marriage.  In August 2019, after the wife and children returned from a trip to India, the wife discovered that the husband had started using a highly concentrated form of marijuana that caused significant changes in his behavior.  After an incident in December 2020, during which the husband was "out of control" and physically assaulted the wife and the eldest child, the wife fled with the children to Connecticut to stay with her friends.  The wife and the children remained in Connecticut until February 2021, after

2

which they stayed with the wife's brother in Texas for approximately six months.[1]

The wife filed a complaint for divorce in May 2021, and obtained a G. L. c. 209A abuse prevention order in June 2021. The husband was ordered to vacate the marital home in July 2021, enabling the wife and children to safely move back into the marital home in August 2021 prior to the start of the new school year.

A one-day trial was held on July 8, 2022. The wife, who was represented by counsel, testified at the trial. Although the husband, who was self-represented, indicated that he intended to testify, he declined to do so. The judge then requested the wife's counsel to give her closing argument. The wife's counsel then asked the judge for permission to reopen the evidence to address issues about which she had expected to cross-examine the husband. The judge, however, denied that request. Prior to trial, the husband ignored numerous discovery orders and failed to file mandatory financial statements. On the day of trial, he submitted an incomplete financial statement that he filled out while sitting in the courtroom. He declined

---

[1] The children were still attending school remotely during this period because of the COVID-19 pandemic.

3

to present any other evidence,[2] and largely refused to agree to otherwise uncontested exhibits.

On July 14, 2022, the judge issued the divorce judgment and accompanying findings. With respect to the children, the divorce judgment provided, in relevant part, that (1) the wife shall have sole legal and physical custody; (2) the husband shall have three hours of supervised parenting time per week; (3) the parties shall communicate about the children in writing; and (4) the husband shall pay child support of $100 per week. With respect to the property division, the wife was permitted to retain the marital home, her retirement accounts, and certain other property, subject to paying the husband a lump sum of $93,500. The wife moved to amend the judgment but the judge denied it. The present appeal by the wife followed.

Discussion. 1. Property division. "Our review of a judgment pursuant to the equitable distribution statute, G. L. c. 208, § 34, proceeds under a two-step analysis. 'First, we examine the judge's findings to determine whether all relevant factors in § 34 were considered.'" Adams v. Adams, 459 Mass. 361, 371 (2011), quoting Bowring v. Reid, 399 Mass. 265, 267 (1987). "The second tier of our review requires us to determine

---

[2] Indeed, the husband even refused to disclose his current address to the court, as noted by the judge in her findings.

4

whether the reasons for the judge's conclusions are 'apparent in [the judge's] findings and rulings.'" Adams, supra, quoting Redding v. Redding, 398 Mass. 102, 108 (1986). "A judge's determinations as to equitable distribution will not be reversed unless 'plainly wrong and excessive.'" Adams, supra, quoting Redding, supra at 107.

The wife contends that the judge erred by failing to make findings on several of the mandatory factors under § 34, despite insufficient evidence at trial regarding those factors. The wife asserts that the lack of evidence was attributable to the husband's incomplete financial statement and refusal to testify, and the judge improperly denied her request to reopen the evidence once it became apparent that the husband would not be testifying. We are not persuaded.

The wife was aware that the parties had only been allotted one day for their divorce trial, and she was capable of providing evidence regarding the relevant § 34 factors through her own direct testimony. To the extent that she may have made a strategic decision to elicit testimony regarding certain factors through cross-examination of the husband, the judge was not obligated to relieve her of the consequences of that decision by reopening the evidence after she had already given her closing argument. Weber v. Coast to Coast Med., Inc., 83

Mass. App. Ct. 478, 481 (2013) ("The decision whether 'to admit additional evidence after a party has rested lies in the sound discretion of the trial judge'" [citation omitted]); Caffyn v. Caffyn, 70 Mass. App. Ct. 37, 43-44 (2007) (judge did not abuse discretion in denying wife's request to reopen evidence on issue of property valuation where case had "already been tried to a conclusion" and, during trial, wife made "presumably strategic decision to rely upon the husband's testimony and to forgo expert testimony"). Accordingly, we cannot fault the judge for not making findings on § 34 factors for which the wife could have, but failed to, present sufficient evidence. See Putnam v. Putnam, 7 Mass. App. Ct. 672, 674 (1979) ("when parties decline to offer evidence on [§ 34] factors . . . consideration of the factors thereby omitted can properly be deemed waived").

We are likewise unpersuaded by the wife's assertion that the judge erred by failing to (1) ascribe specific values for certain assets,[3] (2) provide a "chart or detailed analysis of the

---

[3] The wife also claims that the judge erred in omitting certain assets altogether: (1) land in India owned by the husband, and (2) the contents of a safe deposit box in India coowned by the parties. The only evidence pertaining to land in India owned by the husband was a passing reference made by the wife during her testimony. She did not describe the land in any detail, nor did she provide any values for same. Given the minimal evidence regarding that land, the judge did not err in omitting it from the property division. As for the safe deposit box in India, the parties executed a stipulation on the day of trial assigning sole ownership of the box and its contents

6

division of assets," and (3) provide "any explanation for the basis of the $93,500 lump sum" that the wife was ordered to pay to the husband.  The judge was not required to provide a specific value for every single asset or a "chart or detailed analysis" of the property division.  See Ross v. Ross, 50 Mass. App. Ct. 77, 81 (2000) ("Mathematical precision is not required of equitable division of property" [citation omitted]).  The judge's findings reflect appropriate consideration of the § 34 factors on which sufficient evidence was submitted, and the ultimate distribution of property flowed rationally from those findings.  See Williams v. Massa, 431 Mass. 619, 631 (2000). The wife retained the marital home (having an equity value of approximately $77,000), an apartment in India purchased by the parties during the marriage (valued at approximately $120,000), her retirement accounts, a Honda minivan, bank accounts, and other miscellaneous personal property.[4]  The husband retained a

_____

(including jewelry and other valuables) to the wife.  The stipulation was expressly incorporated into and made a part of the divorce judgment.

[4] The parties purchased the marital home in August 2016 for $795,000.  The wife testified that the home had recently been appraised at $1,030,000.  However, the husband insisted on stipulating to a lower value of $700,000, which the wife agreed to.  Sometime between 2006 and 2009, the parties purchased an apartment in India that had been built by the wife's grandfather.  The judge appeared to credit the wife's testimony that the property was worth around $120,000 at the time of trial.

7

joint bank account containing slightly less than $30,000, his retirement accounts, and a Honda sedan. To effectuate an equitable division, the wife was ordered to pay the husband a lump sum of $93,500. The judge's findings reflect that the $93,500 lump sum was comprised of three amounts: $38,500 (representing approximately one-half of the marital home equity), $50,000 (representing slightly less than one-half of the value of the India apartment), and $5,000 (to adjust for the disparate values of the parties' respective vehicles). The property division was not plainly wrong and excessive, and we therefore decline to disturb it. See Adams, 459 Mass. at 371.

2. Child support. The wife next contends that the judge abused her discretion in attributing only minimum wage income to the husband for purposes of calculating child support.[5]

"Income may be attributed where a finding has been made that either parent is capable of working and is unemployed or underemployed." Child Support Guidelines § 1(E)(1) (Oct. 2021). If the judge determines that a parent "is earning less than he . . . could earn through reasonable effort," the judge should

---

[5] The judge found that, at the time of trial, the wife was employed as an assistant professor earning approximately $142,000 per year, and the husband was unemployed earning no income. In calculating the child support order, the judge used the wife's income and the husband's attributed "minimum wage" income.

consider "potential earning capacity rather than actual earnings in making its child support order."  Id. at § 1(E)(2).  We review the judge's attribution of income for an abuse of discretion.  See Davae v. Davae, 100 Mass. App. Ct. 54, 57 (2021).

Here, the judge implicitly determined that the husband, who was unemployed at the time of trial, was capable of earning more with reasonable effort, as reflected by her decision to attribute income to him.  See Davae, 100 Mass. App. Ct. at 59 (accepting judge's "implicit finding that the husband had not been using reasonable efforts to earn to capacity").  In determining the husband's "potential earning capacity," the judge was required to "consider a nonexclusive list of factors, to the extent known and presented to the [judge]" (quotation and citations omitted), id. at 57-58, including the husband's "past employment and earnings history."  Child Support Guidelines § 1(E)(3).  Although the evidence on this issue was admittedly sparse, the judge found that the husband was previously employed by a company as a software engineer earning $130,000 annually. The judge found that the last record of the husband's employment with the company was in September 2021, approximately ten months prior to trial, but "[t]here was no evidence offered as to why or when he left that employment."

9

Instead of considering the husband's recent salary of $130,000, however, the judge ultimately attributed minimum wage income to him. In her subsequent order denying the wife's postjudgment motion to amend, the judge stated that there was "no evidence presented at trial as to what happened to husband's employment," but the "[w]ife did testify that husband used THC in wax form which caused changes in his demeanor and delusions which reasonably render him unable to work at the level before." The wife's testimony regarding the husband's marijuana use, however, related solely to the increased intensity of his rages and corresponding abusive behavior toward her and the children. Neither the wife's testimony nor any other evidence at trial suggested that the husband's work performance began to suffer after he started using marijuana. To the contrary, after the wife discovered the husband's marijuana use and accompanying behavioral changes in August 2019, the husband remained fully employed for at least two years thereafter, through September 2021. The judge's conclusory finding that the husband's use of marijuana "reasonably" rendered him unable to work at his previous level was not supported by evidence in the record. See Prenaveau v. Prenaveau, 75 Mass. App. Ct. 131, 142 (2009), S.C., 81 Mass. App. Ct. 479 (2012) (judge's "ultimate conclusion" must be based on "ground-level facts").

10

Accordingly, we conclude that the judge erred in discounting the husband's recent employment and earnings history when determining his present earning capacity for purposes of child support.  See Child Support Guidelines § 1(E)(3) (judge "shall . . . consider . . . to the extent known and presented to the [judge] . . . [the parent's] past employment and earnings history" [emphasis added]).  The child support order set forth in the divorce judgment must therefore be vacated and the matter remanded for redetermination of the husband's earning capacity.[6]

3.  Husband's parenting time.  The wife next contends that the judge erred in granting the husband supervised parenting time (rather than no parenting time) without making required findings under G. L. c. 208, § 31A, addressing the effect of the husband's abusive behavior on the children.

We review the judge's determination of custody and parenting time for an abuse of discretion.  See Schechter v. Schechter, 88 Mass. App. Ct. 239, 245 (2015).  "In custody matters, the touchstone inquiry [is] . . . what is 'best for the

_____

[6] On remand, the judge should make further findings reflecting consideration of (1) the husband's recent employment and earnings history, and (2) any appropriate inferences to be drawn from the husband's evasiveness regarding his finances.  See Grubert v. Grubert, 20 Mass. App. Ct. 811, 821-822 (1985) (where uncertainty surrounding husband's income was his own doing, judge was entitled to draw all reasonable inferences against him).  Moreover, the judge may, in her discretion, take additional evidence relevant to the husband's earning capacity.

11

child,'" Hunter v. Rose, 463 Mass. 488, 494 (2012), quoting Custody of Kali, 439 Mass. 834, 840 (2003), and the judge is required to "consider evidence of past or present abuse toward a parent or child as a factor contrary to the best interest of the child." G. L. c. 208, § 31A. "If the [judge] finds that a pattern or serious incident of abuse has occurred," the judge must make findings "as to the effects of the abuse on the child, which findings demonstrate that [the custody] order is in the furtherance of the child's best interests and provides for the safety and well-being of the child." Id. "If ordering visitation to the abusive parent, the [judge] shall provide for the safety and well-being of the child and the safety of the abused parent," which may include, among other things, requiring (1) the visitation to be supervised; (2) "the abusive parent to attend and complete, to the satisfaction of the court, a certified batterer's treatment program as a condition of visitation;" and (3) "the abusive parent to abstain from possession or consumption of . . . controlled substances during the visitation and for 24 hours preceding visitation." Id. We "examine the judge's findings to determine whether the requirements of G. L. c. 208, § 31A, were met." Maalouf v. Saliba, 54 Mass. App. Ct. 547, 550 (2002).

12

Here, the judge made the following relevant findings regarding the husband's abusive behavior toward the wife and the children. Throughout the marriage, the husband was "emotionally abusive," he "became angry easily," and his "temper exploded." The husband's anger was often expressed verbally, and sometimes physically. During one incident, the husband became upset and threw a laptop at the wife that hit her leg and caused bruising. During another incident, the husband removed his shoe and raised it to strike the wife but was stopped by his mother (who was visiting the parties at the time). On another occasion, the husband forced the wife to kneel on the floor and not move because he was her "master." On yet another occasion, while driving, the husband ordered the wife out of the car and told her to walk home. After she got out of the car, the husband "zoomed" forward and then backward, and told the wife to get back into the car. The children, who were in the car and witnessed the incident, were crying and calling out, "Mommy, mommy."

In 2019, after the husband began using marijuana, he stopped interacting with the children and his "rages" became more frequent and intense. When disciplining the children, the husband would use physical force against the wife's objection, ordering her to not interfere and stating that it was "important

13

to instill fear in the children" and that his disciplinary methods were "meant to hurt." The husband's disciplinary methods included, among other things, grabbing the children by the collar and shaking them, locking the eldest child in the bathroom for over an hour, and hitting the children (which caused the eldest child to develop a habit of covering his head with his arms when summoned by the husband). In November 2019, the husband became upset with the youngest child and choked him.

In December 2020, during a disagreement between the parties regarding childcare duties, the husband became enraged, shoved the wife (causing her to fall down), and dragged the eldest child down the stairs. The judge credited the wife's testimony that the husband was "out of control" and that she and the children were frightened. The wife locked herself and the children in the bedroom and called her friends from Connecticut to pick them up. When the wife's friends arrived, the youngest child expressed relief, jumping up and down and stating, "I'm safe. I'm safe."

The wife and the children did not return to Massachusetts until August 2021, after the 209A order issued and the husband vacated the marital home. The husband did not see the children at all between December 2020 and July 2022. The judge concluded that it was "in the children's best interest to be re-introduced

14

to [the husband] in a setting where they feel comfortable and with a third-party present."  The judge ultimately granted the husband three hours of supervised visitation once per week in the presence of an agreed-on third party,[7] with the ability to seek modification of the parenting schedule "after a period of successful parenting time with the third-party present."

Here, "[e]ven though the judge made detailed and comprehensive findings, demonstrating close attention to the record, this is not a case in which we may conclude that the judge made implicit findings sufficient to satisfy the statute." Maalouf, 54 Mass. App. Ct. at 550.  Despite the judge's findings describing numerous incidents of verbal, emotional, and physical abuse -- including an incident where the husband choked the parties' then five year old child -- the judge did not make an express finding "that a pattern or serious incident of abuse ha[d] occurred."  G. L. c. 208, § 31A.  Although such a finding could reasonably be inferred from the judge's subsidiary findings,[8] "domestic violence is an issue too fundamental and

---

[7] If the parties were unable to agree on a neutral third party, they were directed to retain the services of a professional parenting time supervisor to be paid for by the husband.

[8] At a minimum, the choking incident appears to qualify as an incident of serious abuse.  See G. L. c. 208, § 31A; G. L. c. 265, § 13K.

15

frequently recurring to be dealt with only by implication."
Maalouf, supra, quoting Custody of Vaughn, 422 Mass. 590, 599
(1996).

Moreover, although the judge's findings reflect
consideration of the "effects of the abuse on the child[ren],"
the findings do not adequately "demonstrate that [the
visitation] order is in the furtherance of the child[ren]'s best
interests and provides for [their] safety and well-being."
G. L. c. 208, § 31A.  The judge found that husband and the
children had an "estranged relationship" before the December
2020 incident, and that he "stopped interacting with the
children" after he began using marijuana in 2019.  Although the
judge found that it was in the children's best interests to be
"re-introduced" to the husband, it is unclear what evidence in
the record supports this.  For example, there is nothing in the
judge's findings demonstrating the existence of a previously
loving and appropriate relationship between the husband and the
children, like in Maalouf, 54 Mass. App. Ct. at 551, or a
willingness on the part of the husband to change his abusive
behavior.[9]

---

[9] To the contrary, the husband told the judge at trial that
he would never attend counseling, even if it meant never seeing
the children again.

16

In the absence of the aforementioned findings, the requirements of § 31A have not been satisfied. We therefore vacate the portion of the divorce judgment granting the husband supervised visitation and remand the matter for the judge to make further findings and redetermine the issue of visitation in light of such further findings. See Maalouf, 54 Mass. App. Ct. at 550-551 (vacating visitation order and remanding matter due to judge's failure to make express findings under § 31A as to whether father's abuse of mother constituted "pattern or serious incident," and effect of abuse on children).

4. Child-related communication and 209A order. Turning to the wife's remaining contention, we agree that the provisions of the divorce judgment requiring the parties to communicate about the children and the "no contact" provisions of the 209A order conflict with each other. "A c. 209A order entered by the Probate and Family Court must be modified when a subsequent custody or visitation order is entered by the Probate and Family Court which conflicts with the c. 209A order. All orders must be consistent" (citation omitted). Commonwealth v. Rauseo, 50 Mass. App. Ct. 699, 710 (2001). "[A] modification of a 209A order initially issued by a Probate [and Family] Court [judge] must be entered on the 209A form of order." Id. at 710-711. Accordingly, on remand, the judge shall modify the "no contact"

17

provisions of the 209A order to be consistent with the child-related communication provisions set forth in the divorce judgment.  See Id. at 710-711 & n.12.

Conclusion.  So much of the divorce judgment, dated July 14, 2022, as pertains to child support and the husband's parenting time is vacated, and those matters are remanded for further proceedings consistent with this memorandum and order. The divorce judgment is affirmed in all other respects. During the pendency of the remand, the husband shall pay temporary child support of $100 per week, unless otherwise ordered by the judge.

So ordered.

By the Court (Rubin, Desmond & Singh, JJ.[10]),

Clerk

Entered:  December 18, 2024.

---

[10] The panelists are listed in order of seniority.